Gwendolyn B. Moore
700 East 52nd Place
Los Angeles, Calif 90011
Phone: 323-447-7921

Fee Paid

FILED

## IN THE UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DIVISION
### LOS ANGELES CALIFORNIA

2024 FEB 23  PM 1:02

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY: _____

**GWENDOLYN B. MOORE** And

**MYRELEAN MOORE - BOTH VESSELS**

c/o Gwendolyn B. Moore

c/o Myrelean Moore – The Living Wo-Man

        **Plaintiffs,**

v.

**NATIONSTAR MORTGAGE d/b/a**

**MR. COOPER GROUP, RUSHMORE SERV.**

**RIGHTPATH SERVICING**

 **and its agents Its Attorney(s) of Record, et al.**

        **Defendants,**

CV24 1508-SB (AJRx)

Complaint.
~~SUMMONS~~

**CASE NO.**

    **YOU ARE HEREBY SUMMONED,** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with the summons, to serve a notice of appearance, on the Plaintiff's' non-attorney (pro per) within twenty (21) days after the service of this summons, exclusive of the day of service. If this summons is not personally served upon you, or if this summons is served upon you outside of the State of California, then your answer or notice of appearance must be served within thirty (30) days. In case of your failure to appear or answer, judgment will be taken against you by default, for the relief demanded in the complaint.

---

**PLAINTIFFS LAWSUIT FOR WRONGFUL FORECLOSURE & DAMAGES**

The basis of venue is where Plaintiffs have a residential property address which is 700 East 52nd Place, Los Angeles, California 90011

DATED: LOS ANGELES, CALIFORNIA
February 21,  2024

_____
Gwendolyn B. Moore
Pro Per Litigants

**SERVICE LIST**

NATIONSTAR MORTGAGE d/b/a
MR.COOPER GROUP,
RIGHTPATH SERVICING, RUSHMORE SERVICING
800 State Hwy 121
Lewisville, TX 75067

Gwendolyn B. Moore & Myrelean Moore
700 East 52nd Place,
Los Angeles, California [90011]

### IN THE UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DIVISION
### LOS ANGELES CALIFORNIA

| | |
|---|---|
| **GWENDOLYN B MOORE,** | **CASE NO.** |
| **MYRELEAN MOORE – BOTH VESSELS** | |
| c/o Gwendolyn B. Moore, | **VIOLATION OF ROSENTHAL FAIR DEBT** |
| c/o Myrelean Moore – The living Wo-men | **COLLECTION ACT, VIOLATION OF UNFAIR** |
| | **BUSINESS PRACTICES ACT, VIOLATION OF** |
| **Plaintiffs',** | **FOURTEENTH AMENDMENT RIGHTS, BREACH** |
| **v.** | **OF IMPLIED COVENANT OF GOOD FAITH AND** |
| | **FAIR DEALINGS, NEGLIGENT MISRE-** |
| | **PRESENTATION, CIVIL CONSPIRCY,  PLAINTIFFS** |
| **NATIONSTAR d/b/a** | **ALLEGATIONS AND CLAIMS, MEMORANDUM OF** |
| **MR. COOPER,** | **POINTS AND AUTHORITIES, FRAUD IN THE** |
| **RIGHTPATH SERVICING,** | **CONCEALMENT, BREACH OF FIDUCIARY DUTY,** |
| **RUSHMORE SERVICING,** | **SLANDER OF TITLE, DECLARATORY RELIEF,** |
| Its Attorney(s) of Record, et al | **WHO HOLDS THE TITLE, FACTS, MORTGAGE** |
| | **ELECTRONIC SYSTEM 'MERS' ASSIGNMENT** |
| **Defendants,** | **OF MORTGAGE** |
| | **HEARING IN EQUITY** |
| | **JURY TRIAL DEMAND** |
| | **RESERVE THE RIGHT TO AMEND** |

---

**PLAINTIFFS LAWSUIT FOR WRONGFUL FORECLOSURE & DAMAGES**

## 1 MILLION DOLLAR CIVIL COMPLAINT FOR MORTGAGE FRAUD

**COMES NOW**, Gwendolyn B. Moore and Myrelean Moore, as joint "Tenants" (hereinafter Gwendolyn and Myrelean or Plaintiffs) proceeding **in propria persona**, and files their civil lawsuit forementioned stated on the property located at 700 East 52nd Place, Los Angeles, California [90011]. Plaintiff's demands that their Pro se status be recognized and treated by the Court as The United States Supreme Court, and US District Courts have held such status be recognized and treated. "A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." **Haines v. Kerner**, *404 U.S. 519, 520-21, 92 S. Ct. 594, 20 I.Ed.2d 652 (1972)*; see also **Estelle v. Gamble**, *429 U.S. 97,106, 97 S.Ct. 285, 292, 50 I.Ed.2d 251 (1976)*; **Gillihan v. Shillinger,** *872 F.2d 935, 938 (10th Cir. 1989)*. "We hold pro se pleadings to a less stringent standard than pleadings drafted by attorneys and construe them liberally". **Tannenbaum v. United States**, *148 F.3d 1262-1263 (11th Cir.1998). "A pro se plaintiff must set forth enough factual allegations to 'nudge [] their claims across the line from conceivable to plausible," or 'their complaint must be dismissed' for failing to state a claim upon which relief can be granted."* **Bell Atlantic Corp. v. Twombly**, 550 U.S. 544, 569-70 (2007); see also **Aschraft v. Iqbal**, 556 U.S. 662 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") Regardless of whether a plaintiff is represented or is appearing pro se, the plaintiff's complaint must allege specific facts sufficient to state a claim. *See Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985)*. Plaintiffs bring forth facts to support their claim herein.

Plaintiffs are before this court by Special Appearance, without waiving any rights, defenses, statutory or procedural rights and demand this court to Issue an Injunction and

Restraining Order pursuant to *Rule 65,(a)(b) (A)*, to force the Bank and their attorney(s) the realtors, and the Property Management Companies to cease and decease all potential, pre-foreclosure and eviction efforts until the Courts rules on the Plaintiff's (TRO) and challenge to the Loan accounting entries of the alleged dispute. The Plaintiff's in this matter seeks relief from the defendants Failure To Disclose a plethora of wrongful practices actions.

In this case, defendant(s) has failed to provide the original promissory note that Plaintiff's has requested several times to verify that there was a debt or provide the loan accounting entries to prove the amount agreed to be paid and the amount that is paid off. Nothing is or was provided to verify the terms of the alleged breached contract. There is no evidence being offered by defendant that is admissible at trial. The pre- foreclosing party cannot and has not laid the proper foundational proof that it ever maintained a secured interest in the particular property.

## JURISDICTION

This court has jurisdiction over False Claim Act violations filed by citizens pursuant to Title 31, section 3730(b)(1). Title 31, section 3732(a) authorizes nationwide service of process and provides that an action under the False Claims Act "may be brought in any judicial district in which the defendant...can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred." Jurisdiction is additionally established by Title 28, section 1331 (violation of U.S. law) section 1348 (a national bank), and section 1347 (collection of any revenue). Venue is proper in Los Angeles County as the actions complained of occurred in Los Angeles County. This court has jurisdiction over this matter pursuant to 28 USC Ch. 85. These actions which are the basis of this lawsuit, the institution and pursuit of Failure to Disclose associated with wrongful residential

mortgage pre-foreclosure, foreclosure, threaten to foreclose for non-payment etc., and fraud were committed by MR. COOPER, hereinafter referred to as Defendant or MR. COOPER. Jurisdiction is proper "other jurisdiction" where the Constitution, whereby Judicial Power, SECTION authorizes such out of necessity. The Judicial power shall be vested in one Supreme Court, (who may extend such powers in a Court of Appeals, in District Courts, in County Courts, in Metropolitan Courts), and in such other courts and may be established by positive law i.e. equity, as equity is the law, as equity is everything and law without equity must still render equity. Therefore, this court has the power to decree in equity upon the Express Trust matter in-camera/chambers and may enforce the Bill of Rights put forth in this bill as expressed in the Constitution. A civil suit is a table with four legs: two opposing parties (2 legs), Subject Matter Jurisdiction (1 leg), and a Competent Fact Witness (1 leg). If any one of the Legs is missing, the pleading fails to make the prima facie case. "The burden of proof of jurisdiction lies with the asserter." *See McNutt v. GMAC, 298 US 178.* Plaintiff's has met that burden.

To state a claim under 42 USC 1983 the Plaintiff's must allege facts establishing that a state actor had deprived them of a right, privilege or immunity secured by the United States Constitution or statute. *Eldredge v. Town of Falmouth, 662 F. 3d 100, 104 (1st Cir 2011);Tobin v Univ. of Maine Sys., 62 F. Supp 2d 162, 165 (D. Me 1999); 42 USC 1983.* In evaluating a Defendant's Motion to Dismiss, this Court must review the Complaint to determine whether the Plaintiff have pled "sufficient facts" to show that [they have] a plausible entitlement to relief. *Sanchez v Pereira-Castillo, 590 F3d. 31, 41 (1st Cir. 2009)*(internal citations omitted). The Plaintiff's factual allegations here are both plausible and well documented and aside from the Defendant's attempt to create a factual dispute about whether Fraudulent Practicing Act is at the forefront on non-payment are essentially

admitted by the Defendants by acquiescence. In this case, the Plaintiff' Complaint more than adequately alleges that the Defendant violated numerous federal laws governing Real Estate Mortgage.

## RULE OF LAW

Whereby this cause, being a complaint in exclusive equity jurisdiction, (as it directly involves the property/estate/securities of the Plaintiff's), cites the rule of law as follows upon:

### Bill of Rights

No person's (to include infants/minors) property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person, and, when taken, except for the use of the State, such compensation shall be first made, or secured by deposit of money.

## PARTIES

1. Plaintiffs Gwendolyn and Myrelean Moore are natural person residing in the state of California, their home address is 700 East 52nd Place, Los Angeles, California 90011.

2. The Defendant Nationstar Mortgage, LLC is doing business as Mr. Cooper with their principal address located 800 State Highway 121 Bypass Lewisville, TX 75067

3. Pursuant to Code of Civil Procedure § 474, plaintiff is ignorant of the true names of the defendants and such defendant may be designated in any pleading or proceeding by any name, and when his/her true name is discovered.

4. The actual names of the liable parties will be added when they are discovered.

## BACKGROUND FACTS

5.  Plaintiff's files his complaint so that he meets the burden of Proof and Stating a Claim upon relief can be granted. Plaintiff's states their claims as follows:

Plaintiff's conducted extensive research with the aid of private Forensic Audit as an expert witness in support of this complaint.

6.  Gwendolyn and Myrelean, known as Sureties, issued an Uncertificated Security as a (Accommodation) Promissory Note on June 3, 2016, regarding a purported loan for $338,751.00. The purported Original Lender of the June 3, 2016, loan is named Skyline Financial Corp., A California Corporation organized and existing under the laws of California. Lender's address is 27001 Agoura Road, Suite 350, Calabasas, CA. 91301

7.  Sureties pledged a Constructive Deed of Trust Security Instrument to grant an alternate means of collections filed against their Superior Claim to Title filed in the Official Records of the (Los Angeles County Recorder's Office on June 3, 2016, at 04:26 pm, PST, Instrument: 20180816026 (Exhibit A).

8.  The purported mortgaged loan contract[s] between the parties is specific as to the duties of each party. Surety executed the note as the accommodation party for SKYLINE FINANCIAL CORP., the accommodated party. After June 09, 2016, SKYLINE FINANCIAL CORP., as Accommodated party sold its personal property interest in the Plaintiff's Accommodate 'Note' and or 'Assignment' as a transferable record Asset-Backed Certificates Trust. Asset-Backed Certificates trust and attempted to sell its personal property security interest in the Plaintiff's pledged Constructive Deed of Trust. Thus, breaching their Fiduciary Duty by not complying with the requirements of the Constructive Deed of Trust.

9.  The Mortgage is invalid and unenforceable on that it became fully matured on March 3, 2017, or 9 months after. Plaintiff's clearly stated to MR. COOPER, that they were

withholding payments until validation/investigation was conducted, Defendants never met that burden. Plaintiff's reserves the right to update any Security Agreement signed by any defendant concerning this property. On its face, it only benefits the 'Grantor'.

10. **It is now incumbent on this court to query Defendants as to Defendants' lawful position in this instant matter. If Defendants refuse to stipulate in open court that Defendants are the CREDITOR in this instant matter, this court must remove Defendants from this hearing forthwith, as this court is here to settle a matter between a CREDITOR and a DEBTOR.**

11. **Accordingly, if Defendants are not the CREDITOR in this Matter, then Defendants have thus stipulated that Plaintiff MUST be the CREDITOR in this matter.**

12. Defendants cannot be the **CREDITOR** in this instant matter as Defendants NEVER risked any assets, nor are Defendants holding any assets.

13. A **CREDITOR** cannot be a **CREDITOR** if they don't hold the asset in question, [*i.e.: the NOTE and/or the property*; and **Mortgage Pass-through Trusts**, *i.e. R.E.M.I.C., as defined in TITLE 26, Subtitle A, CHAPTER 1, Subchapter M, PART II, §§ 850-862]* cannot hold assets for if they do their tax exempt status is violated and the Trust itself is void *ab initio*.

14. Defendant MUST NOW inform this court, the I.R.S. and the S.E.C. of their status of either being a **CREDITOR** and/or not being a **CREDITOR**.

15. Defendant's own acts of fraud upon this court, Plaintiff's, and the public in general are the single cause of this paradox and absent Defendants stating the claim as **CREDITOR,** this court cannot hear from Defendants.

16. By Law and precedent and in accordance with the Supreme Court of the United States *pro se* Pleadings MAY NOT be held to the same standard as a lawyer's and/or attorney's; and

whose motions, pleadings and all papers may ONLY be judged by their function and never their form. *See: Haines v. Kerner; Platsky v. CIA; Anastasoff v. United States*; Litigants are to be held to less stringent pleading standards;

> **See:** *Haines v. Kerner, 404 U.S. 519-421; In re Haines: pro se* litigants are held to less stringent pleading standards than admitted or licensed bar attorneys. Regardless of the deficiencies in their pleadings, pro se litigants are entitled to the opportunity to submit evidence in support of their claims.
>
> **See also:** *Platsky v. C.I.A., 953 f.2d. 25; In re Platsky*: court errs if court dismisses the pro se litigant without instruction of how pleadings are deficient and how to repair pleadings.
>
> **See also:** *Anastasoff v. United States, 223 F.3d 898 (8th Cir. 2000)*; In re Anastasoff: litigants' constitutional (guaranteed) rights are violated when courts depart from precedent where parties are similarly situated.

17. For this matter, Defendant is and/or may be the listed Defendant, any and all parties Defendant refuses to reveal to Plaintiff's and/or this Court, irrespective of whether or not said party and/or parties are known to this Court and/or Plaintiff's and/or Defendant, the Corporate *ens legis* entity Defendant is employed by and/or is an officer thereof, and/or any other parity and/or parties, indispensable or not, any and all other party and/or parties receiving any pecuniary gain from, through, and/or by Defendant's fraudulent act(s).

18. Plaintiff's hereby questions the authenticity of ALL dates and/or ALL signatures by ALL parties on ALL documents, including without limitations, notarized documents, "contracts", "deeds", "titles", affidavits, and/or the like, including without limitations the dates and/or signatures by notary publics, officers, employees, and any and ALL parties attesting to any and ALL claims, facts, accounting, transfers, recordings, publications, and/or the like, etc.

19. Plaintiff's disavows any and ALL implied and/or conferred and/or inferred "understanding" of "*legalese*" terms now and at the time of the "signing" of any and ALL of the documents pertaining to this action.

20. Plaintiff's disavows any and ALL presumptions made by this Court, Defendant, and any and ALL other parties when said presumption may be detrimental to Plaintiff's interest and/or case.

21. Plaintiff's hereby demands ALL of Plaintiff's Rights be protected by this Court, including without limitations, State and federal constitutionally protected Rights, God given Rights, Unalienable, Civil Rights, Human Rights, Rights protected by Treaty(s), and/or ALL privileges and/or immunities, and/or the like.

22. Plaintiff's hereby demands this Court refuse to commit, and act to prevent Defendant from committing, any and ALL acts barratrous in nature.

23. Plaintiff's hereby demands ALL applicable Rules of Court, Rules of Procedures, Laws, and/or Statutes be adhered to without preference for any party.

## COUNT I - VIOLATION OF ROSENTHAL FAIR DEBT
## COLLECTION PRACTICES ACT

24. Under the provisions of the Fair Debt Collection Practices Act ("FDCPA"), deb collectors are prohibited "from making false or misleading representations and from engaging in various abusive and unfair practices." *Heintz v. Jenkins, 514 U.S. 291, 292 (1995); Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1030 (9th Cir. 2010).*

25. The California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), "like its federal counterpart FDCPA, is designed to protect consumers from unfair and abusive debt collection practices." *Robinson v. Managed Accounts Receivable Corp., 654 F.Supp.2d 1051, 1060 (C.D. Cal. 2009) (citing Cal. Civ. Code § 1788.1).*

26. The provisions of FDCPA are incorporated into the Rosenthal Act under Cal. Civ. Code § 1788.17. Consequently, conduct by a debt collector that violates the FDCPA violates

Rosenthal Act as well. See *Hosseinzadeh v. M.R.S. Assocs., 387 F. Supp. 2d 1104, 1118 (C.D. Cal. 2005).*

27. **Established Violation of FDCPA / Rosenthal Act:  In** order to establish violations under this act, plaintiff must prove: (I) they were consumers (2) who were the object of a collection activity arising from a consumer debt, and (3) the defendant is a "debt collector," and (4) who engaged in an act or omission prohibited by the FDCPA or Rosenthal Act. *Miranda v. Law Office of D. Scott Carruthers, 2011 WL 2037556, at \*4 (E.D. Cal May 23, 2011)* (citing *Turner v. Cook, 362 F.3d 1219, 1227-28 (9th Cir. 2004)).*

28. Established Debt Collectors: The FDCPA defines debt collector as including: (1) "any person who uses any instrumentality of interstate commerce or the mails in any business for the principal purpose of which is the collection of any debts," and (2) any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another." *15 U.S.C. § 1692a(6).*

29. Rosenthal Act Definition of Debt Collector: this is "broader than that contained in the FDCPA." *Izenberg v. ETS Servs., LLC, 589 F. Supp.2d 1193, 1199 (C.D. Cal. 2008).* Under the Rosenthal Act, a "debt collector" is defined as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." *Cal. Civ. Code§ 1788.2(c).*

30. **Required Prongs FDCPA / Rosenthal Act:** (I). Plaintiff is a mortgage loan consumer and defendants are the debt collectors servicing his mortgage. Second, (2) plaintiff was the object of a collection activity for payments of $1,915.00 that Plaintiff's tried to pay; Third, (3) the defendants are debt collectors, and they use mail and interstate commerce for collecting debts owed. Finally, (4) defendants engaged I prohibited acts and omissions by not practicing fair lending practices. This is a common practice to cut and swindle citizens

as such with the intent to foreclose and cause maximum harm and injury to rightful owners
by displacing them from their homes and into the streets.

## COUNT II - VIOLATION OF UNFAIR BUSINESS PRACTICES ACT

A.    **Pre-Cel-Tech formulation:** The balancing test requires "'an examination
of [the] impact [of the defendant's conduct] on its alleged victim, balanced against the reasons,
justifications and motives of the alleged wrongdoer. In brief, the court must weigh the utility
of the defendant's conduct against the gravity of the harm to the alleged victim....'" *South Bay
Chevrolet v. Gen. Motors Acceptance Corp., 72 Cal.App.4th 861886 (1999) (quoting State
Farm Fire & Casualty Co. v. Superior Court, 45 Cal.App.4th 1093, 1103-04 (1996)).*

B.    **Post-Cel-Tech formulation**: The tethering test requires that "any finding of
unfairness ... be tethered to some legislatively declared policy"; "unfair" conduct "threatens
an incipient violation of ... law or violates the policy or spirit of [the] laws because its effects
are comparable to or the same as a violation of the law." *Cel-Tech, 20 Cal.4th at 186, 187.*

C.    **Section 5 formulation**: The Section 5 test requires that: "(1) the consumer
injury must be substantial; (2) the injury must not be outweighed by any countervailing
benefits to consumers or competition; and (3) it must be an injury that consumers themselves
could not reasonably have avoided." *Camacho v. Automobile Club of Southern California,
142 Cal.App.4th 1394, 1403 (2006) (citing Orkin Exterminating Co. v. F.T.C., 849 F.2d
1354, 1364 (11th Cir. 1988).*

31. Section § 17200 Damages: Plaintiff may seek restitution of actual damages and damages
for injunctive and declaratory relief. The level of pleadings to satisfy a yield for all three

prongs is established. Plaintiff clearly establishes fraudulent acts and negligent

misrepresentation with respect to defendants' conduct.

32. Whenever it is proven by a preponderance of the evidence that a defendant has engaged in

conduct in violation of paragraph (24) of subdivision (a) of Section 1770, in addition to all

other remedies otherwise provided in this section, the court shall award treble actual

damages to the plaintiff.

## COUNT III

## VIOLATION OF FOURTEENTH AMENDMENT RIGHTS

## (42 U.S.C. § 1983)

33. The purpose or intent under this statute to discriminate must be present before there is a

violation of equal protection. Personnel Adm'r of *Massachusetts v. Feeney, 442 U.S.*

*256, 99 S.Ct. 2282 (1979)*. In order to provide an analytical framework for the

establishment of a prima facie case, Courts have held that employment discrimination

applies equally to claims brought under Title VII and under the Equal Protection

Clause. *Arrington v. Cobb County, 139 F.3d 865, 873 (11th Cir. 1998)*.

34. Plaintiffs contend this cause of action is a prima facie case based on relevant facts that

Fourteenth Amendment Rights were violated as a result of defendants allowing unknown

state actors to access and make financial decisions to his mortgage account. In addition,

the Equal Protection Clause originally was intended to be used to fight

discrimination based on race. However, over the years, groups other than those based on

gender or race have been entitled to equal protection, even in mortgage fraud. For example,

in Romer v. Evans, 517 U.S. 620, 116 S.Ct. 1620 (1996), the Court held that a Colorado law

violated the equal protection clause because its purpose was not the furthering of a legitimate

governmental purpose but rather hostility toward homosexuals and bisexuals.

35. As such, Compensatory damages are awarded for the harm caused by the defendant's violation of the plaintiffs legal rights'. D. DOBBs, HANDBOOK ON THE LAW OF REMEDIES § 3.1 (1973). Such damages may be special or general. Special damages are awarded for past, pecuniary losses arising out of circumstances peculiar to the plaintiffs case and are recoverable only upon proof of actual loss.

36. General damages, on the other hand, may be awarded for either pecuniary or nonpecuniary losses, and provide compensation for harm that any plaintiff can be expected to suffer as a result of the commission of the tort in question. Additionally, special damages are those that must be itemized in the complaint (such as past medical expenses), whereas general damages require no specific allegations. H. McGREGOR, DAMAGES 15-20 (13th ed. 1972).

37. In privacy actions, on the other hand, general damages are presumed solely for harm to the plaintiffs interest in privacy. RESTATEMENT (SECOND) OF TORTS§652(H) ( I 977). The principal purpose of both special and general compensatory damages is to put the plaintiff in the same position as the plaintiff would have been but for the defendant's breach of a legal duty. D. DOBBS, supra note 14, § 3.1.

38. Moreover, Punitive damages are awarded in addition to compensatory or nominal damages. D. DOBBS, supra note 14, § 3.9; C. McCoRMICK, supra note 15, § 77.

39. Proof of a highly culpable state of mind is necessary to support an award of punitive damages and the amount of the award is dependent upon the defendant's financial circumstances. Punitive damages primarily serve penal and deterrent functions.

40. Defendants' actions were done with a high degree of moral culpability by intentionally interfering with a Federal Program by allowing state actors, that they refuse to identify, make financial decisions and breach plaintiff's mortgage account with the intent to cause

serious harm to all members of plaintiff's family, in violation of 42 U.S.C. § 1983. Plaintiff

seeks all obtainable damages and relief deemed appropriate and fair.

## BREACH OF IMPLIED COVENANT
## OF GOOD FAITH AND FAIR DEALINGS

41. In every contract or agreement there is an implied promise of good faith and fair dealings.

This means that each party will not do anything to unfairly interfere with the rights of any

other party to receive the benefits of the contract; however, the implied promise of good

faith and fair dealings cannot create obligations that are inconsistent with the terms of the

contract in violation of C.C.P. § 325.

42. To establish a claim for Breach of Implied Covenant of Good Faith and Fair Dealings, the

plaintiff must prove the following: (i) Plaintiff and Defendant entered into a contract - this

is true, a Mortgage Contract / Agreement was entered, (ii) That plaintiff did all, or

substantially all of the significant things that the contract required - this is true, plaintiff was

compliant with the contract, (iii) That all conditions required for defendants performance

had occurred - which it did, (iv) The defendants did unfairly interfere with plaintiff's right

to receive the benefits of the contract - defendants interfered by allowing actors to access

mortgage account, making previsions to attempt to foreclose, not investigating complaints

of fraud, discriminating against families with unschooled legal education, gross negligence,

misleading facts, misrepresentations, and refusing to disclose the real reasons for their

motives, and (v) Plaintiff and his family members, including those with untrained eyes to

distinguish legal interpretation 'legalese', were harmed by defendants wrongful conduct.[1]

---

[1]The harm alleged in element 5 may produce contract damages that are different from those claimed for breach of the express
contract provisions. Digerati Holdings, LLC v. Young Money Entertainment, LLC (2011) 194 Cal.App.4th 873, 885 [123
Cal.Rptr.3d 736] [noting that gravamen of the two claims rests on different facts and different harm]."

## NEGLIGENT MISREPRESENTATION

43. Federal rule of Civil Procedure 9(b) requires all complaints filed in federal court must comply with FRCP 8(a), which requires "a short and plaint statement ... showing that the pleader is entitled to relief." For allegations of "fraud or mistake" a party must also meet the heightened requirements of Rule 9(b), which requires that the party describe "the circumstances" of the claim "with particularity." *Ashcroft v Iqbal, 556 US 662, 686-87 (2009)* (stating that FRCP 9(b) does not allow the plaintiff to evade the... ).

44. The difference between Rule 9(b) and Rule 8(a) has recently narrowed. In Bell Atlantic Corp v Twombly, 550 US 544 (2007). The Supreme Court raised Rule 8(a)'s pleading standard. See *Bradley Scott Shannon, I Have Federal Pleading All Figured Out, 61 Case W Res L Rev 453, 481-82 (2010)* (arguing that Twombly and Iqbal did not significantly alter federal pleading standards, but rather clarified plaintiffs' obligations and increased use of motions to dismiss).

45. Defendants action was no mistake, and they were calculated and intentional. The interplay between whether the words "fraud" and "mistake" in Rule 9(b) include negligent misrepresentation.

46. Defendants committed fraud by aiding and abetting conspiring against rights, and civil conspiracy under color of law violation §§ 241, 242, and 18 U.S.C. § 371.

47. Plaintiff seeks actual cost damages and injunctive and declaratory relief against defendants and any other award for damages including punitive and / or special damages deemed proper by this Court to discourage and deter defendants from engaging in future misconduct.

48. **Established Claim for Negligent Misrepresentation**: plaintiff must prove all the following prongs - (i) Defendants represented to plaintiff that a fact was true - that plaintiff was in active bankruptcy, (ii) Defendants representation was not true - plaintiff was not in Active Bankruptcy, (iii) That although defendants may have honestly believed that the

representation was true, defendants had no reasonable grounds for believing the representation was true when defendants made it - plaintiff requested defendants policy and procedures and provided data showing this was false, (iv) That defendants intended that plaintiff rely on this representation - this was true, defendants tried to close the deal with this misleading statement they provided, (v) Plaintiff reasonably relied on defendants representation - which was true until further investigation was conducted, (vi) The plaintiff was harmed - the harm was caused by defendants not accepting Federal Assistance, disclosing and allowing third party access to private accounts, fraud, and defendants led plaintiff to believe that the funding would be accepted, and (vii) Plaintiff's reliance on defendants representation was a substantial factor in causing injury.

## CIVIL CONSPIRACY

49. Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration. In this way, a coconspirator incurs tort liability co-equal with the immediate tortfeasors. " *(Applied Equipment Corp. v. Litton Saudi Arabia Ltd. (1994) 7 Cal.4th 503, 510-511 [28 Cal.Rptr.2d 475, 869 P.2d 454],* internal citations omitted.)

50. There is no cause of action for civil conspiracy itself; an actionable wrong hat is the subject of the conspiracy must be alleged in order to state a cause of action. 2 Witkin, Cal. Procedure (1954) Pleading, § 469, p. 1457; Mcfaddin v. H. S. Crocker Co., 219 Cal. App. 2d 585, 591 [33 Cal. Rptr. 389]. Punitive damages may be awarded not only for intentionally harmful conduct, but for willfully or wantonly negligent or reckless actions as well, *Fordham Coleman v. Nat'! Fuel Gas Distribution Corp., 42 A.D.3d 106, 113, 834 NYS.2d 422,428(4th*

*Dept. 2007).* Defendant's conduct amounted to such gross, wanton, willful fraud, dishonesty, and malicious wrongdoing, as to involve a high degree of moral culpability.

51. The general conspiracy statute, *18 U.S.C. § 371*, creates an offense "[i]f two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose. (emphasis added). *See Project, Tenth Annual Survey of White-Collar Crime, 32 Am. Crim. L. Rev. 137, 379-406 (1995)(generally discussing§ 371).*

52. In addition, if the defendant and others have engaged in dishonest practices in connection with a program administered by an agency of the Government, it constitutes a fraud on the United States under Section 371. *United States v. Gallup, 812 F.2d 1271, 1276 (10th Cir. 1987); Conover, 772 F.2d at 771. In United States v. Hopkins, 916 F.2d 207 (5th Cir. 1990),*

53. Plaintiff is further alleging violations of Title 18 U.S.C. §§ 241, 242, conspiracy against rights and deprivation of rights Under Color of Law.

54. Plaintiff seeks special damages and punitive reparations; due to the nature and reckless actions of defendant's conduct.

### PLAINTIFF'S ALLEGATIONS and CLAIMS:

I.    Plaintiff's hereby alleges and/or states the claim for which relief can be granted as follows:

1) Plaintiff is the CREDITOR in this matter.
2) Defendant is the DEBTOR in this matter.
3) Defendant is not the CREDITOR, or an ASSIGNEE of the CREDITOR, in this instant matter.
4) Plaintiff is not the DEBTOR in this matter.
5) Defendant is not **the Real Party in Interest** in this instant matter.
6) Defendant did NOT put Defendants' assets at risk in this instant matter.

7) Defendant may have only "lent credit" in this instant matter.

8) Defendants purposely destroyed the GENUINE ORIGINAL PROMISSORY NOTE to "securitize" the NOTE.

9) Defendant's use of "*legalese*" in the mortgage documents as a means of converting Real Property from its true owner to Defendant is a criminal act of "conversion through fraudulent means" and therefore the mortgage documents are evidence of a criminal act and cannot be used by this Court in this instant matter. *(See: Black's Sixth; "Understand")*

10) The United States has a primary mortgage Right and/or status on the real property in question and such CANNOT be circumvented by Defendant's fraudulent and unlawful mortgage.

11) Defendant has been paid in full for the "contract" in question.

12) Defendant will fail to join "all indispensable parties" as such joinder would be prima facie evidence of Defendant's fraudulent act of securitizing the "PROMISSORY NOTE."

13) All "investors" involved in the securitization of the "Promissory Note" are indispensable parties to this action and MUST be joined by Defendant in any rebuttal, response, reply, answer, and/or the like by Defendant.

14) Defendant is using a corporate entity and/or TRUST in furtherance of fraudulent acts.

15) Defendant has no immunity for Defendant's fraudulent acts.

16) Defendant is jointly and severally responsible for ALL of Plaintiff's losses, cost  fees, and/or damages; *including without limitations*, emotional damages, punitive damages, inclusive of but not limited to: alienation of affection from: spouse, boy and/or  girl "friend", friends, children, pets, co-worker(s), client(s), customer(s), and any and all other parties effected directly and or indirectly and/or collaterally even if caused by Plaintiff's inability to deal emotionally with the financial issues; as said issues are and have been caused by Defendant's fraudulent acts.

55. Defendant MUST rebut ANY and ALL ALLEGATIONS and/or CLAIMS with specificity, quoting facts and laws; or Defendant thereby stipulates Defendants agree with Plaintiff's ALLEGATIONS and/or CLAIMS; and Defendants forever forsake arguing against Plaintiff's allegations and/or

claims in any court. Merely denying Plaintiff's allegations and/or claims are not sufficient to survive a Motion for Summary judgment against Defendant.

56. Pursuant to *F.R.Cv.P. Rule 8(b)(6)* and/or all allegations and/or claims made by Plaintiff MUST be accepted as true by this Court unless said allegations and/or claims are rebutted with a preponderance of the evidence by Defendant. Any and all such assertion and/or averments presented by Defendant must be *et hoc paratus est verificare* and done under penalty of perjury.

57. Defendant's claim to be the Real Party in Interest is false, fraudulent and unlawful. Pursuant to, *inter alia*, Rule 17(a), Defendant must prove Defendant is the Real Party in Interest, not just claim such.

58. It is a functional impossibility for Defendant to be the Real Party in Interest without the GENUINE ORIGINAL PROMISSORY NOTE. Ergo, it is a functional impossibility for Defendant to prove Defendant is the Real Party in Interest without presenting to this court the GENUINE ORIGINAL PROMISSORY NOTE.

59. It is an incontrovertible fact that Defendant is not in possession of the GENUINE ORIGINAL PROMISSORY NOTE, and accordingly, it is an incontrovertible fact that Defendant is committing fraud upon the court by falsely and/or fraudulently claiming Defendant is in possession of the GENUINE ORIGINAL PROMISSORY NOTE.

60. Pursuant to law and in accordance with Plaintiff's claims; Defendants MUST present to this court the GENUINE ORIGINAL PROMISSORY NOTE and prove to be the **CREDITOR** in this agreement or agree to Plaintiff's demand for Judgment by Default in favor of Plaintiff.

61. This pleading is supported by the law of the case herein, the prior rulings of this Court herein, the docket of this case, all documents involving Plaintiff and Defendants, each of which are incorporated by this reference as if fully set forth, and for each of which Plaintiff requests this Court to take Judicial Notice thereof. This pleading is further supported by the accompanying Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

62. Diversity of jurisdiction is present in this matter as the real property in question is in Mississippi and Defendant and/or other entities involved are in other states and/or countries. Therefore, Plaintiff hereby invokes Erie doctrine and will accordingly use Mississippi law and/or may use federal laws accordingly.

63. Defendants are committing BARRATRY by fraudulently filing documents only a CREDTIOR and the Real Party in Interest may file, when in fact Defendants are NOT the CREDTIOR and NOT the Real Party in Interest in this instant matter.

64. It is a functional impossibility for Plaintiff to "understand" the mortgage documents Defendants used in their unlawful attempt to convert Plaintiff's Real Property to Defendants' possession. Plaintiff's inability to "understand" the "legalese" used by the attorneys who wrote the mortgage documents prohibits Defendants from using said documents as evidence against Plaintiff.

65. In fact, Defendants' *malum in se* act of using "legalese" in a document to unlawfully convert real property is defined in law as "theft through unlawful conversion."

66. Defendants cannot now use said documents to convert said property without said documents being used as prima facie evidence of Defendants' felonious act.

This court cannot use evidence of a felonious act to assist a criminal in furtherance of a felonious act.

See: **Black's Law Sixth Edition**:

67. Understand. To know; to apprehend the meaning; to appreciate; as, to understand the nature and effect of an act. *International-Great Northern R. Co. v. Pence, Tex. Civ.App., 113 S.W.2d 206, 210*. To have a full and clear knowledge of; to comprehend. Thus, to invalidate a deed on the ground that the grantor did not understand the nature of the act, the grantor must be incapable of comprehending that the effect of the act would divest him of the title to the land set forth in the deed. As used in connection with the execution of wills and other instruments, the term includes the realization of the practical effects and consequences of the proposed act. See Capacity.

Definitions from **Bouvier's Law Dictionary 1856 Edition**:

**BARRATRY**, crimes. In old law French barat, baraterie, signifying robbery, deceit, fraud. In modern usage it may be defined as the habitual moving, exciting, and maintaining suits and quarrels, either at law or otherwise.

1. Inst. 368; 1 Hawk. 243.

2. A man cannot be indicted as a common barrator in respect of any number of false and groundless actions brought in his own right, nor for a single act in right of another; for that would not make him a common barrator.

3. Barratry, in this sense, is different from maintenance (q. v.) and champerty. (q.v.)

CHAMPERTY, crimes. A bargain with a plaintiff or defendant, *campum partire*, to divide the land or other matter sued for between them, if they prevail at law, the champertor undertaking to carry on the suit at his own expense. *1 Pick. 416; 1 Ham.132; 5 Monr. 416; 4 Litt. 117; 5 John. Ch. R. 44; 7 Port. R. 488.*

4. This offence differs from maintenance, in this, that in the latter the person assisting the suitor receives no benefit, while in the former he receives one half, or other portion, of the thing sued for. See *Punishment; Fine; Imprisonment; 4 Bl. Com. 135.*

5. This was an offence in the civil law. *Poth. Pand. lib. 3, t. 1; App. n. 1, tom. 3, p. 104; 15 Ves. 139; 7 Bligh's R. 369; S. C. 20 E. C. L. R. 165; 5 Moore & P. 193; 6 Carr. & P. 749; S.C. 25 E. C. L. R. 631; 1-Russ. Cr. 179 Hawk.P. C. b.1 c.84, s.5.*

6. To maintain a defendant may be champerty. *Hawk. P. C. b. 1, c. 84, s. 8 3 Ham. 541; 6 Monr. 392; 8 Yerg. 484; 8 John. 479; 1 John. Ch. R. 444;, 7 Wend. 152; 3 Cowen, 624; 6 Co@ven, 90*

I.       Defendants are Not the Real Party in Interest in this, and the non-judicial proceeding as current possession of the GENUINE ORIGINAL PROMISSORY NOTE is a requirement for a party to be the Real Party in Interest in all proceedings pursuant to the U.C.C.

Defendant is not and cannot be the Real Party in Interest and is committing fraud by mentioning or threating an unlawful (pre) foreclosure and or foreclosure on real property owned by Plaintiff's. Absent possession of the GENUINE ORIGINAL PROMISSORY NOTE signed by Plaintiff's;

Defendant cannot lawfully move forward with the non-judicial process as the non-judicial court authorities do NOT have subject matter jurisdiction.

II.        Absent prima facie evidence that Defendant is the Real Party in Interest in this and the non-judicial proceeding, Defendant cannot be considered the Real Party in Interest in this and/or the non-judicial proceeding.

        The ONLY acceptable evidence that Defendant may be the Real Party in Interest is the GENUINE ORIGINAL PROMISSORY NOTE. Defendant did NOT present the GENUINE ORIGINAL PROMISSORY NOTE to Ross and Nicole(as requested) acting in the non-judicial procedure and therefore the non-judicial procedures claims to jurisdiction are and were fraudulent claims and are thus void.

III.       Absent prima facie evidence that Defendant is the CREDITOR in this and the non-judicial proceeding, Defendant cannot be considered the CREDITOR in this and/or the non-judicial proceeding.

68. The ONLY acceptable evidence that Defendant is the CREDITOR in this instant matter is the GENUINE ORIGINAL PROMISSORY NOTE and the accounting showing the Defendant loaning the Plaintiff's the Defendants' assets. Defendant did NOT put assets at risk in this matter. Defendant did NOT present the GENUINE ORIGINAL PROMISSORY NOTE and the accounting records to the officers acting in the non-judicial procedure and therefore the non-judicial procedure "claims to jurisdiction" are and were fraudulent claims and are thus void.

## FRAUD IN THE CONCEALMENT

69. Plaintiff's re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein. Generally, one must prove the following to bring a legally sufficient claim of Fraudulent Concealment.

a.  Concealed or suppressed a material fact;

b.  Had knowledge of this material fact;

c.  That this material fact was not within reasonably diligent attention, observation, and judgment of the Plaintiff's;

d. That the defendant suppressed or concealed this fact with the intention that the Plaintiff's be misled as to the true condition of the property; and

e. That the Plaintiff's was reasonably so misled; and

f. That the Plaintiff's suffered damage as a result.

70. Defendants, MR. COOPER concealed the fact that they were not a depository bank. The purported lender claims to have accepted the issuer Plaintiff's' negotiable instrument as debtor in a deposit account; Defendant, MR. COOPER furthered their deception by purporting to have given consideration for the Plaintiff's accommodation negotiable instrument in the form of real money purportedly executing an underlying obligation (indebtedness) between the parties to the contract.

71. Defendant, MR. COOPER concealed in the presentation of the terms of the Deed of Trust contract(s) a cross acceptance of which the Sureties, the issuers of the negotiable instrument, would accept ownership of the real property collateral for executing an accommodation negotiable instrument on behalf of MR. COOPER the accommodated party for the purpose of a material variation to the purported contract in which the Borrowers would be acting as surety for MR. COOPER the accommodated party to use Sureties' accommodation parties promise to put the accommodated into funds as surety and a personal property security interest in the sureties' pledged security instrument as collateral for the purpose of negotiating a personal property (payment intangible) transaction with MR. COOPER for a service release premium without recourse to be received through a table funded transaction at the closing of the purported loan.

72. Defendant, MR. COOPER concealed a third party Securitizer as well as the terms of the Securitization Agreement, including, *inter alia*: (1) Financial Incentives paid; (2) existence of Credit Enhancement Agreements, and (3) existence of Acquisition Provisions. By concealing the securitization, the true character of the purported loan in this way had a material effect on Plaintiff's that was known by Defendant MR. COOPER but not disclosed.

Defendant, MR. COOPER, knew or should have known that there was no meeting of the minds between the issuer Sureties and the purported depository bank or lender MR. COOPER, regarding the true character of the purported loan and that most importantly it created no underlying obligation between the parties to the contract.

73. Defendant, MR. COOPER knew or should have known that had the truth been disclosed, Sureties would not have pledged a security agreement to MR. COOPER the accommodated party for the purpose of an alternate means of collection.

74. Defendant, MR. COOPER intended to induce Sureties based on these material misrepresentations and improper disclosures.

75. Plaintiff's' and Sureties reasonable reliance upon the misrepresentations was detrimental. But for failure to disclose the true and material terms of the transaction, Sureties could have been alerted to issues of concern. Plaintiff's and Sureties would have known of Defendant's true intentions and profits from the proposed purported loan. Plaintiff's and Sureties would have known that the actions of Defendant, MR. COOPER would have an adverse effect on the value of Plaintiff's' and Sureties home by clouding the title.

76. Defendants' failure to disclose the material terms of the transaction induced Sureties to enter into the purported loan and accept the Services as alleged herein.

77. Defendants were aware of the misrepresentation and profited from them.

78. As a direct and proximate result of the misrepresentations and concealment, Plaintiff's has been damaged in an amount to be proven at trial, including but not limited to costs of Loan, damage to Plaintiff's financial security, emotional distress, and Plaintiff's incurred costs, attorney's fees, and forensic research.

79. Defendant, MR. COOPER is guilty of malice, fraud and / or oppression. Defendants' actions were malicious and done willfully in conscious disregard of the rights and safety of Plaintiff's in that the actions were calculated to injure Plaintiff's. As such, Plaintiff is

entitled to recover, in addition to actual damages, punitive damages to punish Defendant
and to deter them from engaging in future misconduct. The law clearly states that [you],
the borrower, can back out of or resend the Purchase without loss of any FRN Money, but
no one disclosed this fact to Plaintiff's…NON-DISCLOSURE= NOTARY AND BANK
FRAUD.. Fraud vitiates all contracts null and void, even  Court judgments and has no
expiration date.

### UNCONSIONABLE / IMPLIED CONTRACT[S]

80. Plaintiff's re-alleges and incorporate by reference all paragraphs as though fully set forth
herein.

81. The actions of Defendants, as set forth herein, has resulted in the Plaintiff's being forced,
tricked, and misled into parting with their property.

82. Generally, one must prove the following to bring a legally sufficient claim of
Unconscionable and or Implied Contract.

    a.  Undue Influence;

    b.  Duress;

    c.  Unequal Bargaining Power

    d.  Unfair Surprise; and

    e.  Limited Warranty

    f.  Prove Up the Note / Loan

83. In every contract or agreement, there is an implied promise of good faith and fair dealings.
This means that each party will not do anything to unfairly interfere with the rights of any
other party to receive the benefits of the contract; however, the implied promise of good
faith and fair dealings cannot create obligations that are inconsistent with the terms of the
contract and of non-disclosure violation.

84. To establish a claim for Breach of Implied Covenant of Good Faith and Fair Dealings, the
Plaintiff's must prove the following: (i) Plaintiff's and Defendant entered into a contract -
this is true, a Mortgage Contract / Agreement was entered, (ii) That Plaintiff's did all, or
substantially all of the significant things that the contract required - this is true, Plaintiff's
was compliant with the contract, (iii) That all conditions required for defendants
performance had occurred - which it did, (iv) The defendants did unfairly interfere with

plaintiff's right to receive full Disclosure of the contract - defendants interfered by allowing fraud enjoin its actions, and defendants attempt to foreclose, not investigating complaints of fraud, gross negligence, misleading facts, misrepresentations, and refusing to disclose the real reasons for their motives.

85. Defendant, MR. COOPER present in the origination of the purported loan that specific criteria such as FICO score and other industry standard underwriting requirements must be met in order to qualify for a loan of money for the subject property from MR. COOPER.

86. Defendant, MR. COOPER presented in the origination of the purported loan that a preliminary signature on the mortgage loan contract[s] was required in order to "lock in" an interest rate regarding the terms of the purported loan.

87. Defendant, MR. COOPER failed to clarify in the terms of the mortgage loan contract[s] that MR. COOPER the purported lender on the contract[s] was not the party giving consideration for the purported loan; rather MR. COOPER concealed they were financially benefitting by bargaining with a third party to finance the loan via a wire funds transfer in order to fund the purported loan at the closing using a warehouse line of credit from MR. COOPER.

88. Defendants knew or should have known that through a consciousness of innocence the Plaintiff's were at a special disadvantage when attempting to grant an alternate means of collection via the Constructive Deed of Trust to MR. COOPER.

89. It is clear that Defendants intended to exploit the Plaintiff's special disadvantage and deny Plaintiff's their superior rights to subject property.

## BREACH OF FIDUCIARY DUTY

90. Plaintiff's re-allege and incorporates herein by reference all previous paragraphs as though fully set forth herein.

91. Generally, one must prove the following to bring a legally sufficient claim of Breach of Fiduciary Duty.

**Breach of full Disclosure**:

a. Breach of good faith and fair dealing;
b. Misuse of superior or influential position;
c. Misuse of superior knowledge; and
d. Failure to act in another's best interest

92. Sureties pledged a security agreement via a constructive Deed of Trust whom designated Mortgage Electronic Registration System, Inc., nominee and beneficiary under the constructive trust [silent].

93. Defendant MR. COOPER failed to disclose to the Sureties that they were not the legitimate creditor but more accurately were account debtors in the accommodated table funded transaction with MR. COOPER, Asset-Backed Certificates Trust. Defendants action was no mistake, and they were calculated and intentional. The interplay between whether the words "fraud" and "mistake" in Rule 9(b) include negligent misrepresentation.

94. Defendant MR. COOPER having only a personal property interest over the real property collateral failed to meet their fiduciary duty to release and satisfy the real property lien "Deed of Trust" and the beneficial security interest (personal property) therein after receiving payment for [all] sums represented by the Defendants' Accommodated .

95. Prior to August 14, 2018, and unknown to Sureties, Defendant MR. COOPER for payment rendered through a service release premium from MR. COOPER divested itself of the Accommodated Note but did not comply with the covenants of the Constructive Deed of Trust, specifically, "Payment of all sums secured by this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument."

96. MR. COOPER's acting not in the best interest of the grantor of the constructive Deed of Trust failed to adhere to their Fiduciary Duties; MR. COOPER was to release and satisfy the security instrument in order for the Plaintiff's to maintain clear and marketable title. As a result of its failure to comply with the Constructive Deed of Trust, Defendants caused a cloud on the Plaintiff's' superior claim to title. As a result, Plaintiff's was harmed.

97. MR. COOPER never divulged to Plaintiff's that they were not loaning anything. Plaintiffs were never informed that they were exchanging a Promissory Note (**which has a real cash value**) that was appropriated to fund the  implicit loan. Plaintiffs were led to assume that they were loaning them their own, or other people's money, which Plaintiffs have established as false. MR. COOPER blatantly concealed this fact. If plaintiff's were misinformed, according to contract law, the agreement is null and void due to "*Non-Disclosure.*"

98. The general conspiracy statute, 18 U.S.C § 371, creates an offense "[i]f two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose. (emphasis added*). See*

*Project, Tenth Annual Survey of White-Collar Crime, 32 Am. Crim. L. Rev. 137, 379-406
(1995)(generally discussing § 371).*

99. In addition, if the defendant and others have engaged in dishonest practices in connection
with mortgage and Security Fraud, it constitutes a fraud on *the United States under Section
371. United States v. Gallup, 812 F.2d 1271, 1276 (10th Cir. 1987); Conover, 772 F.2d at
771. In United States v. Hopkins, 916 F.2d 207 (5th Cir. 1990).*

100.     Contract law states clearly that when an agreement is made between two parties,
each must be given full disclosure of what is transpiring. An agreement is not valid if either
party conceals pertinent information.

## SLANDER OF TITLE

101.     Plaintiff's incorporates herein by reference all previous paragraphs as though fully
set forth herein.

Generally, one must prove the following to bring a legally sufficient claim of slander of
title.

   a.   There was communication to a third party of;
   b.   A false statement;
   c.   Derogatory to another's title;
   d.   With malice; and
   e.   Causing special damages

102.     Had MR. COOPER released the Property and surrendered the Security Instrument
to the Plaintiff's legally entitle to it upon MR. COOPER being paid [all] sums for a payment
intangible via service release premium; rather than breech the fiduciary duty, Plaintiff's
would have a clear and marketable title. Instead, the chain of title regarding securitization
personal property (payment intangible) transaction has not been disclosed by proper
recording with the Secretary of State's office in the state where the real property resides.

103.     Defendant with malice concealed the personal property (payment and tangible)
securitization table funded transaction to MR. COOPER asset backed certificates trust, that
upon default of the personal property (payment and tangible) MR. COOPER
misrepresented a memorialization of a purported true sale of a purported underlying
indebtedness deposit account, payment and tangible eNote, and the paper tangible
accommodated note "Transfer and Assignment of Note and Deed of Trust." After years of
the closing date of the Trust.

104.    Plaintiffs are not attempting to seek enforcement of a third-party contract but is merely showing beyond any reasonable doubt that such withholding of an unrecorded assignment(s) of a payment in tangible eNote or proof MR. COOPER and defendants MR. COOPER were without rights to make a claim to real property in withholding such facts have potentially committed a grave error Slander of Title causing special damage. Such instrument(s) remained without the collateral filed and was never submitted for recordation to perfect defendants right to the payment intangible if the document existed at the time of conveyance. It may be true that defendant has a right to the paper instrument(s) being the accommodated note and the unrecorded assignment as personal property, but such rights do not extend to real property without compliance to statutory law.

105.    The act of recording the purported "Assignment of Deed of Trust" into the official records of the Los Angeles County Record's Office is a communication to a third-party of false statement derogatory to Plaintiff's title made with malice causing special damages to the Plaintiff's claim of title.

## DECLARATORY RELIEF

106.    Plaintiff's re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein. Any person interested under a deed, will, contract or other written instrument, or whose rights are affected by a statute, executive order or regulation, ordinance, or any other governmental regulation may, before breach or violation thereof, bring an action in the appropriate Regional Trial Court to determine any question of construction or validity arising, and for a declaration of his rights or duties, thereunder.

a) Action to quiet title to real property or remove clouds therefrom, authorized by Arts. 476 to 481 of the Civil Code

- This action is brought to remove a cloud on title caused by 1) proceeding, 2) record, 3) instrument, 4) claim, or 5) encumbrance which appears to be valid and effective (Article 476, CC)

## REQUISITES:

(1) **Subject matter** of the controversy must be deed, will, contracts, or other written instrument, statute, executive order, ordinance;

(2) **there must be an actual justiciable controversy** or the ripening seeds of one between persons whose interests are adverse;

- Judicial controversy - refers to an existing case or controversy that is appropriate or ripe for judicial determination, not one that is conjectural or merely anticipatory.
- It is one which is definite and concrete, touching on the legal relations of parties having adverse legal interests.
- The pleadings must show an active antagonistic assertion of a legal right on the one hand, and a denial on the other. (*Imbong vs Ochoa, G.R. No. 204819, April 8, 2014)*

(3) For an action for declaratory judgment to lie, there must be a **justiciable controversy.** The petition must show "an active antagonistic assertion of a legal right on one side and a denial thereof on the other concerning a real, and not a mere theoretical question or issue." An actual controversy does not arise upon the mere ⊠ling by the Solicitor General of an opposition to the petition for declaratory relief, for the reason that the cause of action must be made out by the allegations of the complaint or petition, unaided by the answer. **(Delumen vs Republic, G.R. No. L-5552) There must have been no breach of the document in question -** when the law or contract has already been contravened prior to the filing of an action for declaratory relief, the courts can no longer assume jurisdiction over the action;

(4) The terms of said documents and the validity thereof are doubtful and require juridical construction **the issue invoked must be ripe for judicial determination -** as for example, where all administrative remedies have been exhausted;

107.     An actual controversy has arisen and now exists between Plaintiffs and Defendants specified hereinabove, regarding their respective rights and duties in the subject note(s) and security instrument. Plaintiff's requests a judicial determination of the rights, obligations and interest of the parties with regard to the subject property, and such determination is necessary and appropriate at this time under the circumstances so that all parties may ascertain and know their rights, obligations and interests with regard to the subject property.

108.     Plaintiff's should be the equitable owner of the Subject Property which has the following legal description:

**LOT 20 OF TIFAL BROTHERS 52ND PLACE TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORED IN BOOK 17, PAGES 94 AND 95 OF MAPS, IN THE OFFICE OF THE COUNTY RECOREDERS OF SAID COUNTY.**

109.    Plaintiff's seeks to quiet title as of the date of the filing of this complaint. Plaintiff's seeks a judicial declaration that the title to the subject property is vested in Plaintiff's alone and that the defendant be declared to have no interest estate, right, title or interest in the Subject Property and that the Defendants, their agents and assigns, be forever enjoined from asserting any estate, right, title or **interest in the Subject Property subject to Plaintiff's rights.**

110.    **The refusal to grant declaratory relief by the court is tantamount to a dismissal.**

111.    **Exception:** This provision doesn't apply in actions falling under par. 2 of Sec.1 of Rule 63 because in actions for reformation of instrument, quieting of title, and consolidation of ownership, the court is bound to render a decision.

112.    **Section 6.**    Conversion into ordinary action. - If before the final termination of the case, a breach or violation of an instrument or a statute, executive order or regulation, ordinance, or any other governmental regulation should take place, the action may thereupon be converted into an ordinary action, and the parties shall be allowed to file such pleadings as may be necessary or proper.

A case may be converted into an ordinary action if before final termination of the case, a breach should take place, the action may be converted into ordinary action to avoid multiplicity of suits.

An ordinary civil action is when the Plaintiff's alleged that his right has been violated by the defendant; judgment rendered is coercive in character. A writ of execution may be executed against the defeated party.

A special civil action of declaratory relief is that an impending violation is sufficient to file a declaratory relief; no execution may be issued. The court merely makes a declaration.

Proceedings considered as similar remedies are:

1.    Action for reformation of an instrument;

2.    Action for quieting of title; and

3.    Action to consolidate ownership

**TANDA vs ALDAYA, G.R. Nos. L-9322-23, January 30, 1956**

113.     **PROCEDURAL HISTORY**: On April 10, 1948, appellant instituted in the Court
of First Instance of Cavite an action for the annulment of a certain contract of sale with
*pacto de retro*.

114.     On May 11, 1949, the trial court rendered a decision declaring the contract valid and
absolving appellee of the complaint. After a motion to set aside judgment and a motion for
new trial filed by appellant were denied by the trial court, appellant brought the case on
appeal to the Supreme Court. On July 23, 1951, the Supreme Court affirmed the decision
appealed from particularly with regard to the validity of the contract which is disputed by
appellant. After the two motions for reconsideration filed by appellant were denied, the
decision became final and executory and the record was returned to the court of origin; but,
on November 8, 1951, appellant initiated the present case for declaratory relief. Considering
that this action is purposeless because, while outwardly its aim is to seek a declaratory relief
on certain matters but in effect its purpose is to nullify the judgment rendered in the previous
case (Civil Case No. 4606) which was affirmed by the Supreme Court appellee filed a
motion to dismiss on the ground that the case states no cause of action.

**ISSUE**: Whether a court decision can be a subject of declaratory relief

115.     **HOLDING**: A court decision cannot be the subject of declaratory relief for the
simple reason that if a party is not agreeable to a decision either on questions of law or of
fact, he may file with the trial court a motion for reconsideration or a new trial in order that
the defect may be corrected (section 1, Rule 37). The same remedy may be pursued by a
party with regard to a decision of the Court of Appeals or of the Supreme Court (section 1,
Rule 54, section 1, Rule 55, in connection with section 1, Rule 53). A party may even seek
relief from a judgment or order of an inferior court on the ground of fraud, accident, mistake
or excusable negligence if he avails of that remedy within the terms prescribed by section
1, Rule 38. In the present case, the fundamental reason why the decision cannot be the
subject of declaratory relief is predicated upon the principle of res judicata which stamps
the mark of finality in a case which has been fully and definitely litigated in court.

116.     Where the judgment has become final and executory and no further step needs be
taken affecting the equities of the parties, the evidence presented therein may be withdrawn.

117.     Plaintiff's moves the court to determine any question of construction or validity arising from the subject matter, and for the declaration of rights and duties. [Section 1, Rule 63].

## WHO IS THE HOLDER

***CASE LAW IN QUESTION:*** *"The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."*

118.     Enforcement of a note always requires that the person seeking to collect show that it is the holder.. A holder is an entity that has acquired the note either as the original payor or <u>transfer by endorsement</u> of order paper or physical possession of bearer paper…"[t]he only person a debtor is obligated to pay is someone who suffers a financial injury, the person who executed any original contract, or who otherwise lent you money." Debt collectors argue that the right to judicial foreclosure is waived in the deed of trust. This is so. BUT it is only waived before the original creditor. It is not waived before a debt collector. Once the alleged loan goes into default and is assigned to a debt collector, the effective law changes. The FDCPA is now the law under which action is governed. The law states; 1692(i) "Venue for debt collection is defined in 15 USC 1692 (i)-any contest over real property must be brought before a judicial court as a judicial action. This means there can be no "non-judicial foreclosure by a debt collector."

119.     These requirements are set out in **Article 3 of the Uniform Commercial Code, which has been adopted in every state, including Louisiana, and in the District of Columbia.**. Even in **bankruptcy proceedings, State substantive law controls the rights of note and lien holders**, as the Supreme Court pointed out almost forty (40) years ago in **United States v. Butner**, 440 U.S. 48, 54-55 (1979)..However, as Judge Bufford has recently illustrated, in one of the cases discussed below, in the bankruptcy and other federal courts, **procedure is governed by the Federal Rules of Bankruptcy and Civil Procedure..** And procedure may just have an impact on the issue of "who," because, if the holder is unknown, pleading and standing issues arise..

120.     For a recent FDIC case, see **Liberty Savings Bank v. Redus**, 2009 WL 41857 (Ohio App. 8 Dist.), January 8, 2009.. THE RULES Judge Bufford addressed the rules issue. See **In re Hwang**, 396 B.R. 757 ( Bankr. C. D. Cal. 2008).. First, there are the pleading problems that arise when the holder of the note is unknown.. Typically, the issue

will arise in a motion for relief from stay in a bankruptcy proceeding.. According to **F.R.Civ. Pro. 17**, "[a]n **action must be prosecuted in the name of the real party in interest.."**

121.    This rule is incorporated into the rules governing bankruptcy procedure in several ways..

122.    When the actual holder of the note is unknown, it is impossible – not difficult but impossible – to plead a cause of action in a federal court (unless the movant simply lies about the ownership of the note)..

123.    Unless the name of the actual note holder can be stated, the very pleadings are defective. STANDING Often, the servicing agent for the loan will appear to enforce the note..

124.    Assume that the servicing agent states that it is the authorized agent of the note holder, which is "Trust Number 99.." The servicing agent is certainly a party in interest since a party in interest in a bankruptcy court is a very broad term or concept.. See, e.g., **Greer v. O'Dell**, 305 F.3d 1297, 1302-03 (11th Cir. 2002.).

125.    However, the servicing agent may not have standing: "Federal Courts have only the power **authorized by Article III of the Constitutions** and the statutes enacted by Congress pursuant thereto.. ... [A] plaintiff must have Constitutional standing in order for a federal court to have jurisdiction.." In re Foreclosure Cases, 521 F.Supp. 3d 650, 653 (S.D. Ohio, 2007) (citations omitted)..

126.    But, the **servicing agent does not have standing, for only a person who is the holder of the note has standing to enforce the note**.. See, e.g., **In re Hwang, 2008 WL 4899273 at 8**.. The servicing agent may have standing if acting as an agent for the holder, assuming that the agent can both show agency status and that the principle is the holder.. See, e.g., **In re Vargas**, 396 B.R. 511 (**Bankr. C.D. Cal. 2008**) at 520.


## FACTS

127.    Cal. Gov. Code § 27288.1

128.    All documents described in this section now or hereafter authorized by law to be recorded in the official records of a county shall contain the following information in addition to any information as may be required by law pertaining to the particular document:

(a) If the document effects or evidences a transfer or encumbrance of an interest in real property, the name or names in which the interest appears of record, except that a notice of assessment recorded pursuant to Section 3114 of the Streets and Highways Code, a notice of special tax lien recorded pursuant to Section 3114.5 of the Streets and Highways Code, and a notice of award of contract recorded pursuant to Section 5248 of the Streets and Highways Code, shall show the name or names of the assessed owners as they appear on the latest secured assessment roll.

129.    *Cal.Civ.Code § 1213 – Record of conveyances; constructive notice; recording certified copies; effect*

*Every conveyance of real property or an estate for years therein acknowledged or proved and certified and recorded as prescribed by law from the time it is filed with the recorder for record is constructive notice of the contents thereof to subsequent purchasers and mortgagees; and a certified copy of such a recorded conveyance may be recorded in any other county and when so recorded the record thereof shall have the same force and effect as though it was of the original conveyance and where the original conveyance has been recorded in any county wherein the property therein mentioned is not situated a certified copy of the recorded conveyance may be recorded in the county where such property is situated with the same force and effect as if the original conveyance had been recorded in that county.*


**ERIR STATUTES BELOW**

130.    Cal.Com.Code § 3305. Defenses and claims in recoupment

(b) "… An obligor is not obliged to pay the instrument if the person seeking enforcement of the instrument does not have rights of a holder in due course and the obligor proves that the instrument is a lost or stolen instrument"

131.    *Cal.Com.Code § 3301: "Person entitled to enforce" an instrument means (a) the*
*holder of the instrument, (b) a nonholder in possession of the instrument who has the rights*
*of a holder, or (c) a person not in possession of the instrument who is entitled to enforce*
*the instrument pursuant to Section 3309 or subdivision (d) of Section 3418."*

*Cal.Com.Code § 3302: "holder in due course" means the holder of an instrument if both*
*of the following apply: (1) The instrument when issued or negotiated to the holder does not*
*bear such apparent evidence of forgery or alteration or is not otherwise so irregular or*
*incomplete as to call into question its authenticity. (2) The holder took the instrument (A)*
*for value, (B) in good faith, (C) without notice that the instrument is overdue or has been*
*dishonored or that there is an uncured default with respect to payment of another*
*instrument issued as part of the same series, (D) without notice that the instrument contains*
*an unauthorized signature or has been altered, (E) without notice of any claim to the*
*instrument described in Section 3306, and (F) without notice that any party has a defense*
*or claim in recoupment described in subdivision (a) of Section 3305."*

132.    *Cal.Com.Code § 3501: (a) "Presentment" means a demand made by or on behalf*
*of a person entitled to enforce an instrument (1) to pay the instrument made to the drawee*
*or a party obliged to pay the instrument or, in the case of a note or accepted draft payable*
*at a bank, to the bank; ... (b)(2) **Upon demand of the person to whom presentment is made,***
***the person making presentment shall (A) exhibit the instrument,** (B) give reasonable*
*identification and, if presentment is made on behalf of another person, reasonable evidence*
*of authority to do so, and (C) sign a receipt on the instrument for any payment made or*
*surrender the instrument if full payment is made. (3) Without dishonoring the instrument,*
*the party to whom presentment is made may (A) return the instrument for lack of a necessary*
*indorsement, or (B) refuse payment or acceptance for failure of the presentment to comply*
*West's Annotated California Codes*

*Civil Code*

*Division 3. Obligations*

*Part 4. Obligations Arising from Particular Transactions*

*Title 14. Lien*

*Chapter 2. Mortgage*

*Article 1. Mortgages in General*

*...A power of attorney to execute a mortgage must be in writing, subscribed, acknowledged, or proved, certified, and recorded in like manner as powers of attorney for grants of real property....*

*...Recording instruments or judgments affecting real property, see Government Code § 27280 et seq....*

*Rule 4.74.   Receipt of Distribution*

*2. Rule 4.74.   Receipt of Distribution*

*Cal. Com. Code § 3203 – Transfer of instrument; rights acquired by transfer.*

*(a) An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument.*

*(b) Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course, but the transferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument.*

*(c) Unless otherwise agreed, if an instrument is transferred for value and the transferee does not become a holder because of lack of indorsement by the transferor, the transferee has a specifically enforceable right to the unqualified indorsement of the transferor, but negotiation of the instrument does not occur until the indorsement is made.*

*(d) If a transferor purports to transfer less than the entire instrument, negotiation of the instrument does not occur. The transferee obtains no rights under this division and has only the rights of a partial assignee.*

*Cal. Com. Code § 7501 – Form of negotiation for tangible and electronic documents of title; requirements of "due negotiation"*

*(a) The following rules apply to a negotiable tangible document of title:*

*(1) If the document's original terms run to the order of a named person, **the document is negotiated by the named person's indorsement and delivery**...* (emphasis added)

*Cal. Com. Code § 3205. Special indorsement; blank indorsement; anomalous indorsement*

*(a) If an indorsement is made by the holder of an instrument, whether payable to an identified person or payable to bearer, and the indorsement identifies a person to whom it makes the instrument payable, it is a "special indorsement." When specially indorsed, an instrument becomes payable to the identified person and may be negotiated only by the indorsement of that person. The principles stated in Section 3110 apply to special indorsements.*

*(b) If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a "blank indorsement." When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed.*

*(c) The holder may convert a blank indorsement that consists only of a signature into a special indorsement by writing, above the signature of the indorser, words identifying the person to whom the instrument is made payable.*

*(d) "Anomalous indorsement" means an indorsement made by a person who is not the holder of the instrument. An anomalous indorsement does not affect the manner in which the instrument may be negotiated.*

*Cal. Com. Code § 3110. Identification of person to whom instrument is payable*

*(a) **The person to whom an instrument is initially payable is determined by the intent of the person,** whether or not authorized, signing as, or in the name or behalf of, the issuer of the instrument. The instrument is payable to the person intended by the signer even if that person is identified in the instrument by a name or other identification that is not that of the intended person. If more than one person signs in the name or behalf of the issuer of an instrument and all the signers do not intend the same person as payee, the instrument is payable to any person intended by one or more of the signers. (emphasis added)*

**Cal. Com. Code § 3115. Incomplete instrument**

*(a) **"Incomplete instrument" means a signed writing, whether or not issued by the signer, the contents of which show at the time of signing that it is incomplete** but that the signer intended it to be completed by the addition of words or numbers. (emphasis added)*

**Cal. Com. Code § 9102. Definitions and index of definitions**

*(a) In this division:*

*(3) "Account debtor" means a person obligated on an account, chattel paper, or general intangible. **The term does not include persons obligated to pay a negotiable instrument**, even if the instrument constitutes part of chattel paper. (emphasis added)*

**Cal .Com. Code § 9109. Scope of division**

*(a) Except as otherwise provided in subdivisions (c) and (d), this division applies to each of the following:*

*(d) This division does not apply to any of the following:*

*(11) The creation or transfer of an interest in or lien on real property, including a lease or rents thereunder, except to the extent that provision is made for each of the following:*

*(A) Liens on real property in Sections 9203 and 9308.*

*(D) Security agreements covering personal and real property in Section 9604.*

**Cal. Com. Code § 3205. Special indorsement; blank indorsement; anomalous indorsement**

*(a) If an indorsement is made by the holder of an instrument, whether payable to an identified person or payable to bearer, and the indorsement identifies a person to whom it makes the instrument payable, it is a "special indorsement." When specially indorsed, an instrument becomes payable to the identified person and may be negotiated only by the indorsement of that person. The principles stated in Section 3110 apply to special indorsements.*

*(b) If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a "blank indorsement." When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed.*

*(c) The holder may convert a blank indorsement that consists only of a signature into a special indorsement by writing, above the signature of the indorser, words identifying the person to whom the instrument is made payable.*

*(d) "Anomalous indorsement" means an indorsement made by a person who is not the holder of the instrument. An anomalous indorsement does not affect the manner in which the instrument may be negotiated.*

*West's Ann.Cal.Com.Code § 8102. Definitions; index of definitions*

*(a) In this division:*

*(1) "Adverse claim" means a claim that a claimant has a property interest in a financial asset and that it is a violation of the rights of the claimant for another person to hold, transfer, or deal with the financial asset.*

*(2) "Bearer form," as applied to a certificated security, means a form in which the security is payable to the bearer of the security certificate according to its terms but not by reason of an indorsement.*

*(3) "Broker" means a person defined as a broker or dealer under the federal securities laws, but without excluding a bank acting in that capacity.*

*(4) "Certificated security" means a security that is represented by a certificate.*

*(5) "Clearing corporation" means any of the following:*

*(A) A person that is registered as a "clearing agency" under the federal securities laws.*

*(B) A federal reserve bank.*

*(C) Any other person that provides clearance or settlement services with respect to financial assets that would require it to register as a clearing agency under the federal securities laws but for an exclusion or exemption from the registration requirement, if its activities as a clearing corporation, including promulgation of rules, are subject to regulation by a federal or state governmental authority.*

*(6) "Communicate" means to either:*

*(A) Send a signed writing.*

*(B) Transmit information by any mechanism agreed upon by the persons transmitting and receiving the information.*

*(7) "Entitlement holder" means a person identified in the records of a securities intermediary as the person having a security entitlement against the securities intermediary. If a person acquires a security entitlement by virtue of paragraph (2) or (3) of subdivision (b) of Section 8501, that person is the entitlement holder.*

*(8) "Entitlement order" means a notification communicated to a securities intermediary directing transfer or redemption of a financial asset to which the entitlement holder has a security entitlement.*

*(9) "Financial asset," except as otherwise provided in Section 8103, means any of the following:*

*(A) A security.*

*(B) An obligation of a person or a share, participation, or other interest in a person or in property or an enterprise of a person, that is, or is of a type, dealt in or traded on financial*

*markets, or that is recognized in any area in which it is issued or dealt in as a medium for investment.*

*(C) Any property that is held by a securities intermediary for another person in a securities account if the securities intermediary has expressly agreed with the other person that the property is to be treated as a financial asset under this division. As context requires, the term means either the interest itself or the means by which a person's claim to it is evidenced, including a certificate or uncertificated security, a security certificate, or a security entitlement.*

*(10) [Reserved]*

*(11) "Endorsement" means a signature that alone or accompanied by other words is made on a security certificate in registered form or on a separate document for the purpose of assigning, transferring, or redeeming the security or granting a power to assign, transfer, or redeem it.*

*(12) "Instruction" means a notification communicated to the issuer of an uncertificated security that directs that the transfer of the security be registered or that the security be redeemed.*

*(13) "Registered form," as applied to a certificated security, means a form in which both of the following apply:*

*(A) The security certificate specifies a person entitled to the security.*

*(B) A transfer of the security may be registered upon books maintained for that purpose by or on behalf of the issuer, or the security certificate so states.*

*(14) "Securities intermediary" means either:*

*(A) A clearing corporation.*

*(B) A person, including a bank or broker, that in the ordinary course of its business maintains securities accounts for others and is acting in that capacity.*

*(15) "Security," except as otherwise provided in Section 8103, means an obligation of an issuer or a share, participation, or other interest in an issuer or in property or an enterprise of an issuer that is all of the following:*

*(A) It is represented by a security certificate in bearer or registered form, or the transfer of it may be registered upon books maintained for that purpose by or on behalf of the issuer.*

*(B) It is one of a class or series or by its terms is divisible into a class or series of shares, participations, interests, or obligations.*

*(C) It is either of the following:*

*(i) It is, or is of a type, dealt in or traded on securities exchanges or securities markets.*

*(ii) It is a medium for investment and by its terms expressly provides that it is a security governed by this division.*

*(16) "Security certificate" means a certificate representing a security. (17) "Security entitlement" means the rights and property interest of an entitlement holder with respect to a financial asset specified in Chapter 5 (commencing with Section 8501).*

*(18) "Uncertificated security" means a security that is not represented by a certificate.*

*(b) Other definitions applying to this division and the sections in which they appear are:*

*Appropriate person. Section 8107. Control. Section 8106. Delivery. Section 8301. Investment company security. Section 8103. Issuer. Section 8201. Overissue. Section 8210. Protected purchaser. Section 8303. Securities account. Section 8501.*

*(c) In addition, Division 1 (commencing with Section 1101) contains general definitions and principles of construction and interpretation applicable throughout this division.*

*(d) The characterization of a person, business, or transaction for purposes of this division does not determine the characterization of the person, business, or transaction for purposes of any other law, regulation, or rule.*

*Credits: (Added by Stats.1996, c. 497 (S.B.1591), § 9, operative Jan. 1, 1997. Amended by*

*Stats.2006, c. 254 (S.B.1481), § 50.)*

## MORTGAGE ELECTRONIC REGISTRATION SYSTEM aka MERS!

133.    Plaintiff's re-alleges and incorporate herein by reference all previous paragraphs as though fully set forth herein. Generally, one must prove the following to bring a legally sufficient claim of Bifurcation amongst others.

134.    MERS can file a "Notice of Assignment" of the "Security Instrument" but MERS cannot negotiate the Negotiable Instrument since MERS never came into possession of the Negotiable Instrument with Plaintiff's. The fact here that MERS assigned the Security Instrument verifies that bifurcation (separation) of the Security Instrument from the Negotiable Instrument has taken place. Since this was done, the Negotiable Instrument no longer has a "Secured" status and as such the Negotiable Instrument is now an "Unsecured" Indebtedness.

135.    Local Laws of Recordation require the recording of the "Notices of Assignments" that reflect the negotiation of the Negotiable Instrument, but failure to file in public records does not render the Negotiable Instrument invalid. The failure to file establishes bifurcation of the Security Instrument from the Negotiable Instrument and renders the Security Instrument a nullity. The assignment of the mortgage, without an assignment of the debt, is a nullity. *"The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity." Id. Van Burkleo v. Southwestern, Tex. Civ. App., 39 S.W. 1085, 1087; Sheldon v. Sill, 49 U.S. 441 (1850) 49 U.S. 441: "The assignment of the mortgage, without an assignment of the debt, is a nullity." See... Kirby v. Williams, 230 F.2d 330 (United States Court of Appeals Fifth Circuit) February 10, 1956,*

136.    Once there is nullity of the Security Instrument it can never be regained as the Negotiable Instrument has been rendered to be an "Unsecured" Indebtedness. The link between the Negotiable Instrument and the Security Instrument can be proved up by following the Uniform Commercial Code or the states equal by showing the properly filed chain of Endorsements. This might possibly prove "Holder/Holder In Due Course" status, and if such is proved up then possibly there is a method to achieve a legal collection action of a money judgment but the right to trigger a foreclosure contained within the Security Instrument is out of reach. Inevitably, in all of MERS actions, the venerable maxim *"nemo dat quod non habet,"* i.e., one cannot give what one does not have, must come into play. See **Mitchell v. Hawley**, 83 U.S. 544, 550 (1872); **Chase v. Sanborn**, 5 F. Cas. 521, 523 (Clifford, Circuit Justice, C.C.D.N.H. 1874) (No. 2,628).

137.     The home-loan industry has had a central electronic database since 1997 to track mortgages as they are bought and sold.. It's run by Mortgage Electronic Registration System, or MERS, a subsidiary of Vienna, Virginia based MERSCORP Inc., which is owned by mortgage companies and Banks.. No Tracking Mechanism MERS has 3,246 member companies and about half of outstanding mortgages are registered with the company, including loans purchased by government-sponsored entities Fannie Mae, Freddie Mac and Ginny Mae, said R.K. Arnold, the company's CEO.. For about half of U.S. mortgages, there is no tracking mechanism.. MERS does not keep any original mortgage Notes or contract securities due to the originals to be destroyed through securitization.

138.     MERS rules don't allow members to submit lost-note affidavits in place of mortgage notes, Arnold said.. "A lot of companies say the note is lost when it's highly unlikely the note is lost," Arnold said.. "Saying a note is lost when it's not really lost is wrong." Lents' attorney, Jane Raskin of Raskin & Raskin in Miami, said she has no idea who owns Lents' mortgage note.. "Something is wrong if you start from what I think is the reasonable assumption that these banks are not losing all of these notes," Raskin said.. "As an officer of the court, I find it troubling that they've been going in and saying we lost the note, and because nobody is challenging it, the foreclosures are pushed through the system."

139.     **In Landmark National Bank v. Kesler, 2009 Kan. LEXIS 834,** the Kansas Supreme Court held that a nominee company called MERS has no right or standing to bring an action for foreclosure.. MERS is an acronym for Mortgage Electronic Registration Systems, a private company that registers mortgages electronically and tracks changes in ownership.. The significance of the holding is that if MERS has no standing to foreclose, then nobody has standing to foreclose – on 60 million mortgages..

140.     That is the number of American mortgages currently reported to be held by MERS.. Over half of all new U.S. residential mortgage loans are registered with MERS and recorded in its name.. Holdings of the Kansas Supreme Court are not binding on the rest of the country, but they are dicta of which other courts take note; and the reasoning behind the decision is sound.. Eliminating the "Straw Man" Shielding Lenders and Investors from Liability, The development of "electronic" mortgages managed by MERS went hand in hand with the "securitization" of mortgage loans – chopping them into pieces and selling them off to investors..

141.     In the heyday of mortgage securitizations, before investors got wise to their risks, lenders would slice up loans, bundle them into "financial products" called "collateralized debt obligations" (CDOs), ostensibly insure them against default by wrapping them in derivatives called "credit default swaps," and sell them to pension funds, municipal funds, foreign investment funds, and so forth.. Banks still do this securitization process.. There were many secured parties, and the pieces kept changing hands; but MERS supposedly kept track of all these changes electronically.. MERS

would register and record mortgage loans in its name, and it would bring foreclosure actions in its name.. MERS not only facilitated the rapid turnover of mortgages and mortgage- backed securities, but it has served as a sort of "corporate shield" that protects investors from claims by borrowers concerning predatory lending practices..

142.    California attorney Timothy McCandless describes the problem like this: "[MERS] has reduced transparency in the mortgage market in two ways.. First, consumers and their counsel can no longer turn to the public recording systems to learn the identity of the holder of their note.. Today, county recording systems are increasingly full of one meaningless name, MERS, repeated over and over again.. But more importantly, all across the country, MERS now brings foreclosure proceedings in its own name – even though it is not the financial party in interest..

143.    This is problematic because MERS is not prepared for or equipped to provide responses to consumers' discovery requests with respect to predatory lending claims and defenses.. In effect, the securitization conduit attempts to use a faceless and seemingly innocent proxy with no knowledge of predatory origination or servicing behavior to do the dirty work of seizing the consumer's home… So imposing is this opaque corporate wall, that in a "vast" number of foreclosures, MERS actually succeeds in foreclosing without producing the original note – the legal sine qua non of foreclosure – much less documentation that could support predatory lending defenses.." The real parties in interest concealed behind MERS have been made so faceless; however, that there is now no party withstanding to foreclose..

144.    The Kansas Supreme Court stated that MERS' relationship "is more akin to that of a straw man than to a party possessing all the rights given a buyer.." The court opined: "By statute, assignment of the mortgage carries with it the assignment of the debt        Indeed, in the event that a mortgage loan somehow separates interests of the note and the deed of trust, with the deed of trust lying with some independent entity, the mortgage may become unenforceable..

145.    The practical effect of splitting the deed of trust from the promissory note is to make it impossible for the holder of the note to foreclose unless the holder of the deed of trust is the agent of the holder of the note.. Without the agency relationship, the person holding only the note lacks the power to foreclose in the event of default.. The person holding only the deed of trust will never experience default because only the holder of the note is entitled to payment of the underlying obligation..

146.    The mortgage loan becomes ineffectual when the note holder did not also hold the deed of trust.." [Citations omitted; emphasis added.] MERS, as straw man, lacks standing to foreclose, but so does original lender, although it was a signatory to the deal.

147.    The lender lacks standing because title had to pass to the secured parties for the arrangement to legally qualify as a "security."

148.    ***The lender has been paid in full and has no further legal interest in the claim.. Only the securities holders have skin in the game; but they have no standing to foreclose, because they were not signatories to the original agreement..***

149.    They cannot satisfy the basic requirement of contract law that a Plaintiff's suing a written contract must produce a signed contract proving he is entitled to relief..

## ASSIGNMENT OF MORTGAGE

116. Plaintiff's re-alleges and incorporate herein by reference all previous paragraphs as though fully set forth herein. Generally, one must prove the following to bring a legally sufficient claim of Bifurcation amongst others.

117. Plaintiff's has seen numerous times, in numerous cases, a Homeowner/borrower/defendant and Plaintiff's (Homeowner) precluded from raising any issues relating to a defective assignment of mortgage (AOM). This language, or similar, is frequently uttered by the court in a final order denying the Homeowner has standing to challenge an assignment of mortgage, and also usually granting summary judgment to Plaintiff's bank, "Defendant is not a party to the contract, or a 3rd party beneficiary, and therefore has no standing to challenge the validity of the assignment."

118. One case frequently cited by banks to support such rulings in the past years is *Livonia Property Holdings, L.L.C., v. Farmington Road Holdings, L.L.C., 717 F.Supp.2d 724 (E.D.Mich. 2010)*, stating "Borrower disputes the validity of the assignment documents on several grounds outlined above. But, as a non-party to those documents, it lacks standing to attack them."

119. It is significant that the same court held differently two (2) years later in another case. "It is true that the *Livonia Properties* opinion contains the statement that "there is ample authority to support the proposition that 'a litigant who is not a party to an assignment lacks standing to challenge that assignment, '" *Livonia Properties, 399 F. App'x at 102 (quoting Livonia Properties Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC, 717 F.Supp.2d 724, 736-37 (E.D. Mich. 2010))*; but when read carefully the case does not stand for such a general and unqualified position. The Court believes, therefore, that *Livonia Properties* does not compel the conclusion that a foreclosure Plaintiff's can never attack the foreclosure by challenging the validity of an underlying assignment." *Talton v. BAC Home Loans Servicing LP, 839 F.Supp.2d 896 (E.D.Mich. 2012)*.

120. Before making a mere layman's attempt at providing answer(s) to potential questions raised above I'd first like to cover a bit of history in regard to conveyance of interests in, and ownership of, real estate generally. It is long standing, and well established, that someone **ALWAYS** owns land, and that such ownership be a matter of public knowledge, of the public record.

### Conveyance Before Writing – Livery of Seisin

### Black's Law Dictionary (8th Edition, 2004) offers the following:

*"Livery of seisin. Hist. The ceremony by which a grantor conveyed land to a grantee. • Livery of seisin involved either (1) going on the land and having the grantor symbolically deliver possession of the land to the grantee by handing over a twig, a clod of dirt, or a piece of turf (called livery in deed) or (2) going within sight of the land and having the grantor tell the grantee that possession was being given, followed by the grantee's entering the land (called livery in law). See SEISIN. [Cases: Deeds 21.C.J.S. Deeds §§ 12–13.]"*

*"[W]e may now pause to wonder how transfer of these potentially infinite interests was accomplished. Without a modern system of land records, it would be desirable that the transfer be effected with sufficient ceremony not only to mark itself indelibly in the memories of the participants, but also to give notice to interested persons such as the mesne lord above the transferor. The central idea was to make ritual livery (meaning 'delivery,' from the Old French livrer) of seisin (meaning, roughly, 'possession,' from the Old French saisir or seisir).*

121. "Assignments of the Mortgage Loans to the Trustee (or its nominee) will not be recorded in any jurisdiction but will be delivered to the Trustee in recordable form, so that they can be recorded in the event recordation is necessary in connection with the servicing of a Mortgage Loan."

122. Plaintiff's pray that this court does not allow into evidence 'retroactive Mortgage Loan Assignments, back-dated or retroactive dates.' Being respectful of the court, the court may like to request the Trustee to explain why they were, are acquiring nonperforming loans and whether such acquisition was a violation of the trustee's fiduciary duty to the Trust.

## APPENDIX

More and more courts are agreeing that the banks "inside" the PSA do not have legal standing (they have no skin in the game and so cannot show the necessary "injury in fact"), are not "real parties in interest" (they cannot show that they followed the terms of the PSA or are otherwise "entitled to enforce" the note) and that there are real questions of whether any securitized mortgage can ever be properly perfected.

The banks' weakness is exposed most often in bankruptcy courts because it is there that they have to show their cards and explain how they claim a legal right, rather than the "of record" right, to foreclose the mortgage. More and more courts are recognizing that, without proof of ownership of the underlying note, holding a mortgage means nothing.

The most recent crack in the Banks's position is evidenced by the federal Eight Circuit Court of Appeals' decision in *In Re Banks, No. 11-6025 (8th Cir., Sept. 13, 2011)*. In Banks, a bank attempted to execute a foreclosure within a bankruptcy case. The bank had a note payable to the order of another entity; that is, the foreclosing bank was "Bank C" but had a note payable to the order of "Bank B" and endorsed in blank by Bank B. The bank, Bank C, alleged that, because the note was endorsed in blank and "without recourse,"

that it had the right to foreclose. The Court held that this was insufficient to show a sufficient chain of title to the note, reversed the lower court's decision and remanded for findings regarding when and how Bank C acquired the note.

## PRAYER and RELIEF

WHEREFORE PREMISES CONSIDERED as Prayer for Relief, and for the foregoing reasons, Plaintiff's pray that Defendants be cited to appear and answer herein, and that upon final hearing, Plaintiff's be awarded judgment:

- Defendant return the **GENUINE ORIGINAL PROMISSORY NOTE** and ALL MONEY PAID [by Plaintiff's to Defendants, with a full disclosure of accounting of such] to Plaintiff's forthwith;

- If Defendant is not able to return the **GENUINE ORIGINAL PROMISSORY NOTE** to Plaintiff's forthwith then Defendant is therefore admitting to Defendant's unlawful attempt to convert real property without cause and/or right.

- Defendant present to Plaintiff's and this Court and Affidavit stipulating that Defendant has NO RIGHTS to the real property in question.

- Defendant returns DEED and all other documents pertaining to ownership of real property in question to Plaintiff's.

- If Defendant **does not** STATE THE CLAIM UNDER PENALTY OF PERJURY that Defendant is the **CREDITOR** in this instant matter, Defendant agrees to accept Judgment by Default in favor of Plaintiff's.

- If Defendant does STATE THE CLAIM UNDER PENALTY OF PERJURY and Defendant is the CREDITOR in this instant matter, Defendant agrees to deliver acknowledgement of such forthwith to the S.E.C. and the I.R.S.

- Declaring that Defendants lack any interest in the subject property which would permit them to foreclose, evict, or attempt to foreclose or evict, the trust deed and / or to sell the subject property;

- Declaring that the trust deed is not a lien against the subject properties, ordering the immediate release of the trust deed of record, and quieting title to the subject properties in Plaintiff's and against Defendants and all claiming by, though, or under them;

- A refund of any wrongfully or improperly collected fees and payments to Defendants to which it had no right;

- Pre-and post-judgment interest at the maximum rate allowed by law;

- Attorney's fees;

- Monetary relief over $100,000 but not more than $2,000,000.00;

- Issue a Temporary Restraining Order against Defendants prohibiting Defendants from pursuing a foreclosure on said property and for this Court to set a Show Cause Hearing why the TRO should not be converted to a Temporary Injunction; and

- Such other and further relief at law and / or in equity to which Plaintiff's may be justly entitled including but not limited to damages within the jurisdictional limits of this Court, together with pre-judgment and post-judgment interest as are allowed by law.

- Withstanding Judicial Action: Collector(s) produce admissible evidence / Competent fact witnesses

- Plaintiff's has met its burden of Fed.R.Civ.Pr 12(b)(6).

b. Dated: _____2/_____ February, 2024

Gwendolyn Moore and Myrelean Moore , Trustee, sui juris
c/o  700 East 52nd Place,
Los Angeles, California [90011] 9998

**EXHIBITS**
Exhibit A:

RECORDING REQUESTED BY:
CalHFA Mortgage Assistance Corporation
Keep Your Home California Program

WHEN RECORDED RETURN TO:
UTOPIAN GROUP
8401 CHAGRIN ROAD SUITE 17
CHAGRIN FALLS, OH 44023

No. 3081984

Case Nbr:   264032

(For Recorder's Use Only)

## DEED OF TRUST
### *(Keep Your Home California Program)*

### NOTICE TO HOMEOWNER
### THIS DEED OF TRUST CONTAINS
### PROVISIONS RESTRICTING ASSUMPTIONS

This Deed of Trust is made on December 19, 2017, by Gwendolyn B Moore, a single woman and Myrelean Moore, a single woman as joint tenants, whose address is: 700 E 52nd Place  , Los Angeles, CA 90011, (the "Homeowner") to the CalHFA Mortgage Assistance Corporation, a California nonprofit public benefit corporation (the "Trustee") whose address is P.O. Box 5678, Riverside, CA 92517 in favor of the CalHFA Mortgage Assistance Corporation, a California nonprofit public benefit corporation, as beneficiary, (the "CalHFA MAC") whose address is P.O. Box 5678, Riverside, CA 92517  and any successor or assigns.

1.        HOMEOWNER, IN CONSIDERATION OF THE INDEBTEDNESS HEREIN RECITED AND THE TRUST HEREIN CREATED HEREBY IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS to Trustee in trust, with power of sale and right of entry and possession, all of Homeowner's right, title and interest now held or hereafter acquired in and to the following: (a) all of that certain real property (the "Property") located in the County of Los Angeles, State of California, described below as,

PARCEL 1:

LOT 20 OF TIFAL BROTHERS 52ND PLACE TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 17, PAGES 94 AND 95 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 2:

A RIGHT OF WAY FOR INGRESS AND EGRESS OVER THE EASTERLY 4 FEET OF LOT 19 OF TIFAL BROTHERS 52ND PLACE TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 17 PAGES 94 AND 95 OF MAPS. (FOR COMMUNITY DRIVEWAY).

APN 5103-005-016

which property address is 700 E 52nd Place   , Los Angeles, CA 90011 which is incorporated herein by this reference; and (b) all buildings, improvements and fixtures now or hereafter erected thereon, and all appurtenances, easements, and articles of property now or hereafter affixed to, placed upon or used in connection with the Property, together with all additions to, substitutions for, changes in or replacements of the whole or any part of said articles of property (all of which real and personal property are sometimes referred to as the "Property"); all of which are hereby pledged and assigned, transferred, and set over onto Trustee, and for purposes of this Deed of Trust declared to be part of the realty; provided, however, that furniture and other personal property of Homeowner now or hereafter situated on said real property are not intended to be included as part of the Property.

2.      THE ABOVE GRANT, TRANSFER, AND ASSIGNMENTS ARE FOR THE PURPOSE OF SECURING:

Payment of the indebtedness evidenced by that certain Promissory Note of Homeowner of even date herewith and titled "Promissory Note (Open-Ended Credit) Keep Your Home California Program" (the "Note") of Homeowner in the face amount of TWENTY-FIVE THOUSAND EIGHT HUNDRED DOLLARS AND 0/100 CENTS, ($25,800.00). The amount due under the Note, may  be increased or decreased due to changes in Homeowner's employment, monthly mortgage payment and/or expenses incurred by Homeowner's First Note and First Deed of Trust (as defined in the Note) lender in connection with Homeowner's default under the First Note and First Deed of Trust, either of which may occur after the initial assistance approval date, but in no case shall the outstanding principal amount of the Note exceed the actual amount of assistance provided by CalHFA MAC on behalf of the Homeowner or the maximum benefit assistance of the approved program in the amount equal to $ 100,000.00, whichever is less.

3.      TO PROTECT THE SECURITY OF THIS DEED OF TRUST, HOMEOWNER AGREES:
        3.1     *Maintenance of the Property.*  (a) To keep the Property in a decent, safe, sanitary, tenantable condition and repair and permit no waste thereof; (b) not to commit or suffer to be done or exist on or about the Property any condition causing the Property to become less valuable; (c) not to remove, demolish or structurally alter any buildings and improvements now or hereinafter located on the Property; (d) to repair, restore or rebuild promptly any buildings or improvements on the Property that may become damaged or be destroyed while subject to the lien of this Deed of Trust; (e) to comply with all applicable laws, ordinances and governmental regulations affecting the Property or requiring any alteration or improvement thereof, and not to suffer or permit any violations of any such law, ordinance or governmental regulation, nor of any covenant, condition or restriction affecting the Property; (f) not to initiate or acquiesce in any change in any zoning or other land use or legal classification which affects any of the Property without CalHFA MAC's written consent; and (g) not to alter the use of all or any part of the Property without the prior written consent of CalHFA MAC.
        3.2     *Insurance.*  To keep the Property insured against loss or damage by fire and such other hazards, casualties and contingencies and by such companies, on such forms and in the amount of the replacement cost of the buildings or improvements on the Property. Neither Trustee nor CalHFA MAC shall by reason of accepting, rejecting, approving or obtaining insurance incur any liability for the existence, nonexistence, form or legal sufficiency of such insurance, or solvency of any insurer for payment of losses.
        3.3     *Payment of Taxes and Utility Charges.*  To pay, at least ten (10) days prior to delinquency, all taxes and assessments, both general and special, fines, penalties, levies and charges of every type or nature levied upon or assessed against any part of the Property.

4.      IT IS MUTUALLY AGREED THAT:
        4.1     *Awards and Damages.*  All judgments, awards of damages, settlements and compensation made in connection with or in lieu of (a) taking of all or any part of or any interest in the Property by or under assertion of the power of eminent domain, (b) any damage to or destruction of the Property or any part thereof by insured casualty, and (c) any other injury or damage to all or any part of the Property, are hereby assigned to and shall be paid to CalHFA MAC. CalHFA MAC is authorized and empowered (but not required) to collect and receive any such sums and is authorized to apply them in whole or in part upon any indebtedness or obligation secured hereby, in such order and manner as CalHFA MAC shall determine at its option. CalHFA MAC shall be entitled to settle and adjust all claims under insurance policies provided under this Deed of Trust and may deduct and retain from the proceeds of such insurance the amount of all expenses incurred by it in connection with any such settlement or adjustment. All or any part of the amounts so collected and recovered by CalHFA MAC may be released to Homeowner upon such conditions as CalHFA MAC may impose for its disposition. Application of all or

any part of the amounts collected and received by CalHFA MAC or the release thereof shall not cure or waive any default under this Deed of Trust. If the Property is abandoned by Homeowner, or if, after notice by CalHFA MAC to Homeowner that the condemnor offers to make an award or settle a claim for damages, Homeowner fails to respond to CalHFA MAC within thirty (30) days after the date such notice is mailed, CalHFA MAC is authorized to collect and apply the proceeds, at CalHFA MAC's option, either to restoration or repair of the Property or to the sum secured by this Deed of Trust.

      4.2    *Prohibition on Transfer of Interests.* Homeowner shall not make any sale, lease, conveyance of the Property in any form, or any part thereof or interest therein, without the prior written consent of CalHFA MAC. CalHFA MAC may decline to give such consent in its sole discretion.

      4.3    *Principal Forgiveness.* If the Homeowner is a Qualified Homeowner (as defined in the Note) at all times prior to and on the 10th year anniversary of the date of the Note ("Maturity Date"), then one hundred percent (100%) of the principal amount outstanding under the Note shall be reduced and forgiven. In addition to the foregoing sentence, if the Homeowner is not in default under any terms herein or the Note, then at the sole discretion of CalHFA MAC the following may apply:

     (a)  If the Maturity Date of the Note is ten (10) years, then on the fifth (5th) year anniversary Date of the Note (as defined therein) the outstanding principal balance shall be reduced by an amount equal to thirty-five percent (35%) of the original principal amount as may be modified under paragraph 2(a) of the Note.

     (b)  If the Maturity Date of the Note is thirty (30) years, then the following shall apply:

        (i)  On the fifth (5th) year anniversary Date of the Note, the outstanding principal balance shall be reduced by an amount equal to thirty-five percent (35%) of the original principal amount as may be modified under paragraph 2(a) of the Note;

        (ii) On the tenth (10th) year anniversary Date of the Note, the outstanding principal balance shall be reduced by an amount equal to thirty percent (30%) of the original principal amount as may be modified under paragraph 2(a) of the Note;

        (iii) On the fifteenth (15th) year anniversary Date of the Note, the outstanding principal balance shall be reduced by an amount equal to twenty percent (20%) of the original principal amount as may be modified under paragraph 2(a) of the Note;

        (iv) On the twentieth (20th) year anniversary Date of the Note, the outstanding principal balance shall be reduced by an amount equal to five percent (5%) of the original principal amount as may be modified under paragraph 2(a) of the Note; and

        (v)  On the twenty-fifth (25th) year anniversary Date of the Note, the outstanding principal balance shall be reduced by an amount equal to five percent (5%) of the original principal amount as may be modified under paragraph 2(a) the Note.

      4.4    *Repayment of Lien.* The indebtedness secured by this Deed of Trust is a deferred payment obligation. Unless the principal amount of the indebtedness securing this Deed of Trust is forgiven pursuant to paragraph 4.3, or unless CalHFA MAC otherwise agrees in writing, Homeowner shall repay to CalHFA MAC the principal and any other amounts due under the Note on the earliest of the following occurrence:

     (a)  The First Note and First Deed of Trust on the Property is refinanced and homeowner receives more than one percent (1%) of the principal amount of the new loan in cash or other value received;

     (b)  The First Note and First Deed of Trust on the Property is assumed; or

     (c)  Title to the Property is transferred except as allowed by the terms of the Note.

      4.5 *Prohibition Against Partial Payments.* Homeowner may pay in full the indebtedness evidenced by the Note at any time. Except as set forth in paragraph 4.4, Homeowner covenants to not remit partial payments for the indebtedness evidenced by the Note, or any part thereof, prior to or in advance of the Maturity Date as described in paragraph 4.3.

      4.6    *Sale or Forbearance.* No sale of the Property, forbearances on the part of CalHFA MAC or extension of the time for payment of the indebtedness hereby secured shall operate to release, discharge, waive, modify, change or affect the liability of Homeowner either in whole or in part.

      4.7    *CalHFA MAC's Rights to Release.* Without affecting the liability of any person for payment of any indebtedness hereby secured (other than any person released pursuant hereto), including without limitation any one or more endorsers or guarantors, and without affecting the lien hereof upon any of the Property not released pursuant hereto, at any time and from time to time without notice: (a) CalHFA MAC may, at its sole

discretion, (i) release any person now or hereafter liable for payment of any or all such indebtedness, (ii) extend the time for or agree to alter the terms of payment of any or all of such indebtedness, and (iii) release or accept additional security for such indebtedness, or subordinate the lien or charge hereof; and (b) Trustee, acting pursuant to the written request of CalHFA MAC, may reconvey all or any part of the Property, consent to the making of any map or plat thereof, join in granting any easement thereon, or join in any such agreement of extension or subordination.

    4.8  *Reconveyance.* Upon written request of CalHFA MAC stating that all sums and obligations secured hereby have been discharged, or otherwise as requested in writing by CalHFA MAC, and upon surrender of this Deed of Trust and the Note and any additional notes to Trustee for cancellation, and upon payment to Trustee of its fees and expenses, Trustee shall reconvey, without warranty, the Property or that part thereof then held hereunder. The recitals in any reconveyance shall be conclusive proof of their truthfulness and the grantee in any such reconveyance may be described "as the person or persons legally entitled thereto." When the Property has been fully reconveyed, the last such reconveyance shall operate as a reassignment of all of the rents, royalties, issues, accounts and profits of the Property to the person or persons legally entitled thereto unless such reconveyance expressly provides to the contrary.

    5.  EVENTS OF DEFAULT

    5.1  *Events of Default.* Any one or more of the following events shall constitute a default under this Deed of Trust: (a) failure of Homeowner to observe or to perform any covenant, condition or agreement to be observed or performed by Homeowner pursuant to the Note or this Deed of Trust; or (b) the occurrence of any event which, under the terms of the Note, shall entitle CalHFA MAC to exercise the rights or remedies thereunder; or (c) the occurrence of any event of default under the terms of any superior note or deed of trust on the Property

    5.2  *Acceleration and Sale.*

      (a)  *Acceleration.* In the event of any default CalHFA MAC, without demand on Homeowner, may declare all sums hereby secured immediately due and payable by notice thereof to Homeowner or by executing and recording or by causing Trustee to execute and record a notice of default and election to cause the Property to be sold to satisfy the obligations secured hereby or by the commencement of an appropriate action to foreclose this Deed of Trust or by any other appropriate manner:

      (b)  *Sale.* After delivery to Trustee of a notice of default and demand for sale and after the expiration of such time and the giving of such notice of default and sale as may then be required by law, and without demand on Homeowner, Trustee shall sell the Property at the time and place of sale fixed by it in said notice of sale, at public auction to the highest bidder for cash in lawful money of the United States of America, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale and from time to time thereafter may postpone such sale by public announcement at the time and place fixed by the preceding postponement. Any person, including Homeowner, Trustee or CalHFA MAC, may purchase at such sale. Upon such sale by Trustee it shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty expressed or implied.

    The recitals in such deed of any matters or facts shall be conclusive proof of their truthfulness. Upon sale by Trustee, and after deducting all costs, expenses and fees of Trustee and of this Deed of Trust, Trustee shall apply the proceeds of sale to the payment of the principal indebtedness hereby secured, whether evidenced by the Note or otherwise, or representing advances made or costs or expenses paid or incurred by CalHFA MAC under this Deed of Trust, or any other instrument evidencing or securing any indebtedness hereby secured and to the payment of all other sums then secured hereby as provided in this Deed of Trust, or any other instrument evidencing or securing any indebtedness hereby secured, in such order as CalHFA MAC shall direct; and then the remainder, if any, shall be paid to the person or persons legally entitled thereto.

    5.3  *Attorney's Fees.* If Trustee or CalHFA MAC shall be made parties to or shall intervene in any action or proceeding affecting the Property or the title thereto or the interest of Trustee or CalHFA MAC under this Deed of Trust, or if CalHFA MAC employs an attorney to collect any or all of the indebtedness hereby secured or to foreclose this Deed of Trust, or authorizes Trustee to conduct trustee's sale proceedings hereunder, then Trustee and CalHFA MAC shall be reimbursed by Homeowner, immediately and without demand, for all reasonable costs, charges and attorney's fees incurred by them or either of them in any such case whether or not suit be commenced, and the same.

    5.4  *Exercise of Remedies: Delay.* No exercise of any right or remedy by CalHFA MAC or Trustee hereunder shall constitute a waiver of any other right or remedy herein contained or provided by law, and no delay by CalHFA MAC or Trustee in exercising any such right or remedy hereunder shall operate as a waiver thereof or preclude the exercise thereof during the continuance of any default hereunder.

5.5    *Trustee Substitution.* The irrevocable power to appoint a substitute trustee or trustees hereunder is hereby expressly granted to CalHFA MAC, to be exercised at any time hereafter, without specifying any reason therefor by filing for record in the office where this Deed of Trust is recorded a deed of appointment, and said power of appointment of successor trustee or trustees may be exercised as often as and whenever CalHFA MAC deems advisable. The exercise of said power of appointment, no matter how often, shall not be deemed an exhaustion thereof, and upon recording of such deed or deeds of appointment, trustee or trustees so appointed shall thereupon, without further act or deed of conveyance, succeed to and become fully vested with identically the same title and estate in and to the Property hereby conveyed and with all the rights, powers, trusts and duties of the predecessor in the trust hereunder, with the like effect as if originally named as trustee or as one of the trustees.

5.6    *Remedies Cumulative.* No remedy herein contained or conferred upon CalHFA MAC or Trustee is intended to be exclusive of any other remedy or remedies afforded by law or by the terms hereof to CalHFA MAC or Trustee but each and every such remedy shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity.

6.    MISCELLANEOUS PROVISIONS

6.1    *Successors, Assigns, Gender, Number.* The covenants and agreements herein contained shall bind, and the benefit and advantages shall inure to, the respective heirs, executors, administrators, successors and assigns of the parties. Wherever used, the singular number shall include the plural, and the plural the singular, and the use of any gender shall be applicable to all genders.

6.2    *Headings.* The headings are inserted only for convenience of reference and in no way define, limit, or describe the scope or intent of this Deed of Trust, or of any particular provision thereof, or the proper construction thereof.

6.3    *Actions on Behalf of CalHFA MAC.* Except as is otherwise specifically provided herein, whenever any approval, notice, direction, consent, request or other action by CalHFA MAC is required or permitted under this Deed of Trust, such action shall be in writing.

6.4    *Terms.* The word "CalHFA MAC" means the present CalHFA MAC, or any future owner or holder, including pledgee, of the indebtedness secured hereby.

6.5    Qualified Homeowner means CalHFA MAC has determined, in its sole discretion from documentation provided by the Homeowner, that Homeowner is eligible to receive financial assistance under CalHFA MAC's Keep Your Home California Program and has satisfied all of the program criteria disclosed in writing to Homeowner, including without limitation occupying the Property as his/her principal residence.

6.6    *Obligations of Homeowner.* If more than one person has executed this Deed of Trust as "Homeowner", the obligations of all such persons hereunder shall be joint and several.

6.7    *Severability.* If any provision of this Deed of Trust shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions hereof shall not in any way be affected or impaired.

6.8    *Indemnification.* Homeowner shall indemnify and hold CalHFA MAC, its officers and agents harmless against any and all losses, claims, demands, penalties and liabilities which CalHFA MAC, its officers or agents may sustain or suffer by reason of anything done or omitted in good faith pursuant to or in connection with this Deed of Trust and not assert any claim against CalHFA MAC, its officers or agents by reason of any action so taken or omitted. Homeowner shall, at Homeowner's expense, defend, indemnify, save and hold CalHFA MAC, its officers and agents harmless from any and all claims, demands, losses, expenses, damages (general, punitive or otherwise), causes of action (whether legal or equitable in nature) asserted by any person, firm, corporation or other entity arising out of this Deed of Trust and Homeowner shall pay CalHFA MAC upon demand all claims, judgments, damages, losses or expenses (including reasonable legal expense) incurred by CalHFA MAC as a result of any legal action arising out of this Deed of Trust.

IN WITNESS WHEREOF, Homeowner has executed this Deed of Trust on the day and year as acknowledged by Notary Public.

_Gwendolyn B. Moore_
Gwendolyn B Moore

_Myrekea Moore_
Myrekea Moore

12. *Homeowner Cooperation.*    Homeowner agrees to execute such other documents as may be reasonably necessary to: (i) consummate the terms and conditions of this Note and Deed of Trust; and/or (ii) correct the terms and conditions of this Note and Deed of Trust if an error is detected after execution of this Note and Deed of Trust ("Corrected Note and Deed of Trust").

13. *Governing Law.*  This Note shall be construed in accordance with and be governed by the laws of the State of California.

14. *Severability.*  If any provision of this Note shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions hereof shall not in any way be affected or impaired thereby.

15. *Time.*  Time is of the essence in this Note.

16. *No Waiver by CalHFA MAC.*  No waiver of any breach, default of failure of condition under the terms of this Note or Deed of Trust shall thereby be implied from any failure of CalHFA MAC to take, or any delay by CalHFA MAC in taking, action with respect to such breach, default or failure or from any previous waiver of any similar or unrelated breach, default or failure; and a waiver of any term of this Note, Deed of Trust, or any of the obligations secured thereby must be made in writing and shall be limited to the express written terms of such waiver

17. *Successors and Assigns.*  The promises and agreements herein contained shall bind and inure to the benefit of, as applicable, the respective heirs, executors, administrators, successors and assigns of the parties.


_____          _____
Myrelean Moore                                     Gwendolyn B Moore

# ALL-PURPOSE ACKNOWLEDGMENT NOTARY FOR CALIFORNIA

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Los Angeles

On 12/26/2017, before me, Vanessa Corado, Notary Public, personally appeared    Gwendolyn B Moore and Myrelean Moore

who proved to me on the basis of satisfactory evidence to be the person(s) whose name (s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature _____        (Seal)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing is being forwarded this
_2 1_ th day of February 2024, the foregoing was served on Defendants by way of certified mail return
receipt requested, to all parties naming MR. COOPER GROUP, and/or RIGHTPATH SERVICING certified
no. 9589 0710 5270 1270 5589 08 and its Third-Party Agents, with a known address of:

800 State Hwy 121
Lewisville, TX 75067

Plaintiff's has met its burden of Fed. R. Civ. P. 4(h) concurrent with Rule 4(l).

By: Gwendolyn: Moore / Myrelean: Moore
All Rights Reserved Without Prejudice,
Void Where Prohibited by Law